Don E. MOORE, Elliot E. Brown, Individually and as Administrator of the Estates of his Minor Children, Karie C. Brown and Elliot E.G. Brown

v.

A.G. EDWARDS & SONS, INC., Neel H. Howard, Jr., Employers Insurance of Wausau, A Mutual Company.

Civ. A. No. 84–5101.

United States District Court,
E.D. Louisiana.

March 13, 1986.

Carl W. Cleveland, Bruce S. Kingsdorf, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, La., for plaintiffs.

Dando B. Cellini, Victoria L. Knight, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., Arthur L. Smith, Patricia Winchell-Hemmer, John Rasp, Martin Zucker, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for A.G. Edwards & Sons, Inc.

Charles E. Hamilton, III, Lucie E. Thornton, New Orleans, La., for Neel H. Howard, Jr.

Rutledge C. Clement, Jr., Amelia J. Williams, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Employers Ins. of Wausau.

## ORDER & REASONS

FELDMAN, District Judge.

Before the Court is a Motion for Summary Judgment brought by defendants, A.G. Edwards & Sons, Inc., Neel H. Howard, Jr., and Employers of Wausau Insurance Company.

## BACKGROUND

This suit focuses on the continuing story of Neel Howard's alleged misrepresentations to a host of investment clients about the future of Tipperary Corporation, and his supposed inside information about the company.

The suit here arises out of a series of stock transactions which the plaintiffs, Don E. Moore and Elliott E. Brown, placed through their stockbroker, defendant Howard, in the Fall of 1981 and in early 1982. Howard was a registered representative and Associate Vice President of A.G. Edwards & Sons, Inc. Plaintiffs, separately, opened securities accounts at Edwards in 1980, with Howard acting as their broker. (Moore, unlike Brown, had authorized Howard to purchase and sell stock in his account without requiring his prior approval.)

The controversy centers around a number of transactions and statements that were allegedly made by Howard beginning in the Fall of 1981. Howard began to buy stock in Tipperary for Moore's account, first without Moore's knowledge. Howard subsequently informed Moore of the purchases and then continued to buy Tipperary stock for Moore's account.

Moore claims that Howard told him in November of 1981 that a sale of Tipperary had been arranged and would be made public in the near future, causing an anticipated increase in the price of the stock. Supposedly, Howard knew the president of Tipperary and the impending sale was secret. Moore needed money for tax payments, and, again, in February of 1982, Moore claims that Howard told him once more that the announcement of a sale would be forthcoming shortly and he'd have enough profit to cover his April tax payments.

Brown began to buy Tipperary stock in November, 1981. Brown, too, claims that Howard told him to buy Tipperary because he had non-public information from his friend, the president of Tipperary Corporation, that there would be an offer to buy Tipperary at a price well above the current market price. Brown later purchased more shares for his children and was again allegedly told by Howard that the sale of the company was still forthcoming.

In early 1982, however, the price of Tipperary stock began to fall. No merger or buyout occurred. Moore sold all his Tipperary stock by the end of August 1982. Brown claims that Howard told him at that time that no buyout had occurred because

the president of Tipperary had an offer on his desk, but had refused to sign it.

At this juncture, the two plaintiffs' cases take on notably different aspects. On October 22, 1982, an article appeared in the local New Orleans newspaper voicing this: "Fraudulent advice led to $2.5 million loss, investors say".

The article reported a lawsuit brought by 34 other plaintiffs who alleged that they had lost money by buying stock from a broker who said that he had inside information that its value was about to rise. The suit was against Edwards and Howard. The stock was Tipperary. The alleged fraud and the stock purchases occurred about the same time Moore and Brown were buying it. The article recounted in detail the same misrepresentations as the ones on which the present plaintiffs base their suits. Brown admits that he read the article in October of 1982, and, further, says that he mentioned the article to Howard towards Christmas of 1982.

Brown's complaint also contains several additional counts which pertain to a separate incident which occurred in June, 1983. Brown told Howard to sell 4,000 shares of Graphic Scanning stock. Howard failed to execute the order and the stock declined significantly in value causing Brown to "miss the market".

Both plaintiffs claim that they first became aware of Howard's fraud in the Summer of 1984; they filed this suit on October 19, 1984.

## CONTENTIONS OF THE PARTIES

Defendants move for summary judgment on all counts. Defendants contend that Counts I through X and XIII through XVI of the complaint are barred by prescription of one, or, two years.

Defendants argue that Count I, a claim under the Securities Exchange Act of 1934, and Count III, a claim brought under the Louisiana Blue Sky Law, are governed by a two year prescriptive period and are, therefore, barred since they were brought over two years after the fraud was known or should have been known to the plaintiffs.

Defendants argue that Counts V, IX, and XIV, which assert causes of action based on negligence, Counts VI and XVI, which assert causes of action based upon fraud, Count II, which makes a claim under RICO, Count VIII, which asserts a cause of action based upon conversion, Counts VII and XV, which assert causes of action based upon breach of fiduciary duty, Count X, which asserts a cause of action based upon misrepresentation and non-disclosure, and Counts IV and XIII, which assert causes of action based upon the Louisiana Unfair Trade Practice and Consumer Protection Act, are subject to a one year prescription period, and are therefore barred since Plaintiffs failed to bring suit within one year of the time when they knew or should have known of the facts which constitute the basis of those claims.

Additionally, the defendants move for summary judgment on Counts IV and XIII, brought under the Louisiana Unfair Trade Practices and Consumer Protection Act (UTPA), on the ground that the UPTA does not apply to securities transactions. Although Defendants concede that there is no Louisiana or Fifth Circuit case law on the application of this statute to securities transactions, defendants argue that the UPTA specifically exempts those transactions which are regulated by the Bank Commissioner, who regulates securities. Defendants also contend that the application of both the UTPA and the Louisiana Blue Sky Law to the transactions at issue would create a prohibited conflict in the construction of state laws.

Defendant Edwards also contends that summary judgment should be granted on Count II, the RICO count, since plaintiffs have not alleged and cannot prove that Edwards is a "person employed by or associated with an enterprise". Defendant contends that Howard is an individual and that Edwards is the enterprise, but that Edwards cannot be both, since the law requires that the person and the enterprise be separate and distinct.

Defendants move for summary judgment on Moore's Count VIII, which is based on

conversion. Defendants contend that Moore authorized Howard to buy and sell securities without his prior approval, and, further, that Moore specifically approved of the Tipperary transactions. Under these facts, defendants argue, Moore cannot prove as a matter of law that conversion occurred.

Defendants believe that plaintiffs' securities claims lack certain essential elements. They say that the element of reasonable reliance is lacking; that Brown knew any buyout offer could be withdrawn any time before it was accepted; and that Moore admits that he did not speak to Howard before Howard first purchased the Tipperary stock. Therefore, neither plaintiff, defendants contend, will be able to fulfill the reliance requirement of Rule 10b–5. Defendants also argue that the misstatements did not occur "in connection with" Moore's purchases of Tipperary stock since some shares were bought without Moore's prior knowledge or approval. Defendants urge that Moore's claims lack the necessary causal relationship.

Defendants also claim that summary judgment is appropriate as to Brown's Counts XI and XII, because they allege violations in which no purchase or sale occurred. Defendants argue that a non-sale, or a mere retention of stock, does not give rise to a cause of action under the securities laws.

Lastly, defendants contend that no private cause of action exists for violations of the rules of the New York Stock Exchange or the National Association of Securities Dealers. Although the Fifth Circuit has not yet ruled on this question, defendants contend that other circuits have held that no such private cause of action exists in law.

Plaintiffs counter all this by noting that the critical issue as to the question of prescription is when the plaintiffs discovered or should have discovered the fraud. (They are correct). Plaintiffs state that their actual or constructive knowledge is a genuine issue of material fact which is hotly in dispute and which should be submitted to the jury, thereby precluding the grant of summary judgment. Neither plaintiff was aware, they argue, of the fraudulent nature of Howard's statements until the Summer of 1984 when they learned that Howard never had had any inside information from the president of Tipperary. Although Brown read the October 22, 1982 article, he conducted no personal investigation into the facts until the Summer of 1984, he acknowledges, when he contacted one of the plaintiffs mentioned in the news story and read the previous complaints that had been filed. Brown contends that whether Brown should have investigated the fraud earlier is a question of fact and that the motion based on prescription should be denied.

Plaintiffs argue that Counts VII and XV, which assert claims for breach of fiduciary duty, and Count X, which asserts a claim for misrepresentation and non-disclosure, have not prescribed because they are subject to the 10 year prescriptive period of Louisiana Civil Code Article 3499, which governs contractual and quasi-contractual claims.

They contend that the Louisiana Unfair Trade Practices Act does apply to securities transactions because the courts have loosely defined the term "unfair trade practice", and that it would not create a conflict to apply the Act here. Plaintiffs claim their unfair trade practice charges have not prescribed because the plaintiffs were not aware of the fraud and the prescriptive period was interrupted.

As to the RICO claim, plaintiffs contest the defendants' assertion that a one year statute of limitation applies to the RICO count. Plaintiffs argue that the two year period provided by the Louisiana Blue Sky Law applies by analogy as the closest statute and the one which best effectuates the purpose of RICO. Plaintiffs contend that the RICO claim has not prescribed since plaintiffs had no knowledge of the fraud until the Summer of 1984. Plaintiffs also contend that Edwards is a "person" employed by or associated with an enterprise within the meaning of RICO, and that the

person and the enterprise need not be separate entities. In any case, they argue that several enterprises existed: Howard and Edwards, and Howard and other Edwards' employees, as well as the Edwards enterprise.

Plaintiffs contend that summary judgment is not appropriate as to Count VIII, conversion, since Moore did not authorize Howard to engage in illegal transactions or to defraud him and that this claim has not prescribed.

Plaintiffs say that they did rely on Howard's misrepresentations and omissions. They point out that reliance is presumed as to omissions, making summary judgment inappropriate on this question. Plaintiffs also contend that the misstatements did occur in connection with the purchase and sale of securities. Plaintiffs counter that the failure to execute a sale order (as to Graphic Scanning) constitutes more than a mere retention, and is actionable as a manipulative or deceptive practice under Rule 10b–5. Finally, plaintiffs concede that they are not pursuing a private cause of action under the rules of the stock exchange, but are merely pointing to the prohibition of discretionary accounts, a fact which was never communicated to Moore.

RULING

After consideration of the many issues involved in this Motion for Summary Judgment, the affidavits and the applicable law, the Court rules as follows:

The Court grants defendants' Motion against Plaintiff Brown on Counts II, IV, V, VI, VII, IX, X, XIII, XIV, XV and XVI based on prescription.

The Court also grants defendants' Motion on Counts IV and XIII, and holds the Louisiana Unfair Trade Practices Act does not apply to these securities transactions.

The Court grants defendant Edwards' Motion on Count II since Edwards cannot, at the same time, be both a person and an enterprise under RICO.

The Court denies the Motion for Summary Judgment on all other counts.

DISCUSSION

For purposes of this Motion, the Court accepts as true the allegations that Howard made certain fraudulent statements about the Tipperary stock and that he failed to execute a sell order when Brown instructed him to sell the Graphic Scanning stock. It is useful to begin by reiterating that "[t]he principal function of the motion for summary judgment is to show that, in the absence of factual disputes, one or more of the essential elements of a claim or defense before the court is not in doubt and that, as a result, judgment should be entered on the basis of purely legal considerations. Summary judgment must, therefore, be rendered when the material offered in support of and in opposition to the motion 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). Under this standard, several of defendants' contentions are well taken.

*Prescription Under the Securities Laws*

Plaintiffs' claims under the federal securities law will prescribe two years after the plaintiffs had actual knowledge of the fraud, or, notice of facts which, in the exercise of due diligence, would have led to actual knowledge. *Wilson v. H.J. Wilson Co., Inc.*, 563 F.Supp. 10, 13 (M.D.La.1982). Similarly, the plaintiffs' claims under the Louisiana Blue Sky Law, La.R.S. 51:701 et seq., prescribe two years after the plaintiffs knew or should have known of the fraud. *Landry v. All American Assurance Co.*, 688 F.2d 381 (5th Cir.1982); *Stein v. Bradford & Co.*, 360 So.2d 607 (La.App. 4th Cir.1978).

Defendants urge this Court to hold that the plaintiffs should have known of the fraud when the buyout failed to occur and the price of the stock dropped dramatically, citing to *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir.1980); *Gaudin v. KDI Corporation*, 576 F.2d 708 (6th Cir. 1978) and *Hupp v. Gray*, 500 F.2d 993 (7th Cir.1974) in support. This Court is, however, unwilling to declare as a matter of

law, that the mere failure of an event to occur is sufficient, under these facts, to have put plaintiffs on notice of the fraud.

Under the facts of this case, the Court cannot decide, on a motion for summary judgment, when plaintiff Moore knew or should have known of the fraud in 1982. That remains a genuine issue of material fact in dispute. Having reached this conclusion, the Court must deny the defendants' Motion for Summary Judgment on Moore's securities claims.

█ However, the factual setting in which we find Brown differs dramatically from that of his fellow plaintiff. Brown admits he read the October 22, 1982 news article. Brown testified that he even mentioned it to Howard towards Christmas of 1982 and that he asked Howard whether there was any substance to the article. Under these circumstances, the Court holds that Brown unqualifiedly knew of the fraud, or had notice of facts that should have excited inquiry into the possibility of fraud. Brown, however, did not investigate further until the Summer of 1984, by his own admission. But Brown's state and federal securities claims are still not time-barred; this suit was filed on October 19, 1984, within two years of his actual or constructive knowledge of the fraud. Defendants' Motion for Summary Judgment based on prescription as to Counts I and III is therefore denied.

### One Year Prescription

The parties agree that Counts VI, and XVI, which are based on fraud, Counts V, IX and XIV, which are based on negligence, and Counts IV and XIII, which are based on the Louisiana Unfair Trade Practices Act, are subject to a one year prescriptive period. As to the causes of action based on Louisiana law, the Court will apply the long standing doctrine of "contra non valentum agere nulla currit praescriptio". This doctrine stops the running of the prescription period when "the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

(This principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned.)". *Chaney v. Louisiana*, 432 So.2d 256, 259 (La. 1983). See also, *Corsey v. State Department of Corrections*, 375 So.2d 1319 (La. 1979).

Applying this principle to the state causes of action, summary judgment is inappropriate to decide whether Moore should have learned of the fraud in 1982 or 1983. The defendants' Motion as it pertains to Counts IV, V, VI, and IX, based on prescription is therefore denied as to Moore for the same reasons expressed earlier.

█ As to plaintiff Brown, however, this Court finds that, for the reasons stated before, the causes of action on Counts IV, V, VI and IX were reasonably knowable to Brown in 1982 when he read the news article, and that his ignorance of the claims is attributable to his own neglect. Brown is therefore deemed to know what he could have known by reasonable diligence. Thus, Brown's state claims in Counts IV, V, VI and IX are time-barred by the one year period.

█ The Court finds that Brown's Counts XIII, XIV and XVI, based on Howard's failure to sell the Graphic Scanning Stock, have also prescribed. Brown has admitted that he knew within a month that Howard had not sold the stock based on Brown's instruction of June 1983 to sell, but that he waited over a year before bringing these claims. The Court has no choice but to hold that Counts XIII, XIV and XVI have prescribed.

As to the other counts, Count II, the RICO claim, and Counts VII and XV, breach of fiduciary duty, and Count X, based on misrepresentation and non-disclosure, the parties dispute the applicable prescriptive periods.

### RICO and Prescription

█ The RICO statute, 18 U.S.C. §§ 1961–1968, does not specify a limitation

period. One must therefore be chosen by analogy. Defendants contend that the one year general fraud period of Louisiana Civil Code Article 3492 should be used. Plaintiffs contend that the longer two year period of the Louisiana Blue Sky Law should be used because it best effectuates the purpose of RICO.

The Court finds that the one year limitation period of the Louisiana general fraud statute is most closely analogous to RICO. The end result of the conduct at issue points to a classic scheme to defraud. The fact that the claim partially stems from securities fraud does not change the pivotal nature of the claim as that of plain common law fraud. At the core of this dispute is the charge that Howard cheated plaintiffs. The central evil RICO targets is fraud; RICO challenges fraudulent conduct in a variety of forms; and, therefore, the limitation period for fraud should apply. See, 18 U.S.C. 1961; *Kirschner v. Cable Tel Corp.,* 576 F.Supp. 234, 241 (E.D.Pa.1983); *Eisenberg v. Gagnon,* 564 F.Supp. 1347, 1354 (E.D.Pa.1983); *D'Iorio v. Adonizio,* 554 F.Supp. 222 (M.D.Pa.1982); *Ingram v. J. Ray McDermott & Co., Inc.,* 495 F.Supp. 1321, 1324 n. 4 (E.D.La.1980).

Application of the one year period in no way frustrates, or is inconsistent with, the federal policy underlying RICO. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Although the Court looks to state law to determine the applicable limitation period, the question of when a cause of action accrues and the limitation period begins to run is still governed by federal law. *Wilson,* 563 F.Supp. at 13. Under RICO, the limitation period begins to run when the fraud was or should have been revealed to the plaintiffs by the exercise of due diligence. *Kirschner,* 576 F.Supp. at 241.

Measured by that standard, the Court finds that Brown's claim under RICO has prescribed. Count II is therefore dismissed as to Brown. The Court denies the defendants' Motion as to Moore for reasons already expressed.

### Breach Of Fiduciary Duty and Prescription

■ The parties also disagree as to the applicable prescriptive periods for Counts VII, X and XV, which are based upon breach of fiduciary duty and misrepresentation and non-disclosure. Defendants contend that these claims sound in tort, and are subject to the one year prescriptive period provided for delictual actions under Louisiana Civil Code Article 3492. Plaintiffs contend that these claims are contractual, or quasi-contractual in nature, and are therefore subject to the ten year prescriptive period of Louisiana Civil Code Article 3499.

This Court has examined the plaintiffs' pleadings and the Pre-Trial Order and cannot find any indication that plaintiffs' claims are based on contract or quasi-contract. The plaintiffs' pleadings must determine the applicable prescriptive periods under Louisiana law. *Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts,* 354 So.2d 192, 194 (La.1978). Unlike the situation in *Fidelity & Deposit Company of Maryland v. Smith,* 730 F.2d 1026 (5th Cir.1984), this Court finds no ambiguity in plaintiffs' pleadings or the Pre-Trial Order. Clearly, no action based on contract was alleged or pursued by plaintiffs. This Court therefore holds that the one year prescriptive period applies.

Under the principles discussed earlier, concerning the construction of prescription statutes, and for the reasons previously given, this Court finds that plaintiff Brown's claims under Counts VII, X and XV have prescribed. The Court, however, denies the defendants' Motion for Summary Judgment as to Counts VII and X based on prescription as to Moore.

### Applicability Of UTPA To Securities Transactions

■ This Court holds the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51–1401 et seq., are inapplicable to securities transactions such as the ones involved in this case. The Court therefore grants defendants' Motion for Summary Judgment as to Counts IX and

XIII. This question is new to Louisiana, but not to other states, whose decisions provide useful guidance.

The Court is especially persuaded by *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162 (4th Cir.1985). The application of the UTPA to these transactions would produce effects that were not intended, it seems, by the Louisiana legislature. For example, the director of the Governor's Consumer Protection Division is given the power to investigate and enforce the UTPA. The application of the UTPA to securities claims would provide for unintended overlapping investigative and enforcement powers because the state banking commissioner is also authorized to investigate and enforce laws pertaining to securities under the Blue Sky law.

An even more bothersome factor to the Court is the prospect of subjecting securities claims to treble damages under the UTPA. Securities transactions have long been regulated by the state Blue Sky Law. This Court finds that if the legislature wanted to expose securities violators to the punitive spectre of treble damages, the Blue Sky statute would have and could have clearly so provided. The Court therefore concludes that the UTPA was not meant to apply to securities transactions and grants the Motion as to Counts IV and XIII. This Court will not assign so loose a meaning to the notion of unfair trade practice so as to divine a result not originally contemplated by the legislature. And that would be the functional result of plaintiffs' arguments on this issue.

### RICO-Enterprise And Person

■ In their complaint, plaintiffs have alleged that Howard and Edwards constituted an enterprise within the meaning of RICO. The complaint further alleges that Howard was associated by the enterprise while employed by Edwards. It alleges that Edwards was associated by the enterprise by employing Howard, among other charges.

The law is clear: a corporate entity cannot simultaneously be the enterprise and the person who conducts the affairs of the enterprise through a pattern of racketeering activity. "Such a distinction focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity." *Bennett v. United States Trust Company of New York*, 770 F.2d 308, 315 (2nd Cir.1985), *cert. den.* —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986) and cases cited therein. The Court finds that Edwards was cast as both the person and the enterprise and, as such, the Motion for Summary Judgment will be granted. Although the RICO count is inartfully drafted, the Court will construe the pleadings in order to reach what the Court believes to be their intended meaning. The Court concludes that Howard was meant to be the person employed by or associated by the enterprise, Edwards. The Court therefore denies Howard's Motion for Summary Judgment based on the RICO count.

### Conversion

We return briefly to Moore's Count VIII, which alleges a cause of action based on conversion. Defendants contend that Moore cannot state a cause of action based on conversion because he gave Howard permission to make the transactions. Defendants cite only to *Madden v. Madden*, 353 So.2d 1079 (La.App. 2nd Cir.1977) in which the court defined such a tort as a "distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's right therein …". 353 So.2d at 1081. The Court finds that the parties insufficiently briefed this issue, and the Court will therefore deny defendants' Motion for Summary Judgment as to Count VIII without prejudice. (The Court has previously stated that Moore's alleged knowledge of the fraud is too fact-oriented to grant a Motion for Summary Judgment on the basis of prescription. The defendants' Motion for Summary Judgment based on prescription as to Count VIII is therefore denied.)

*10b–5*

■ The Court denies defendants' Motion for Summary Judgment on Counts I and XI based on the contention that plaintiffs have failed to state certain elements that are essential to a 10b–5 securities claim.

The Court finds that there are genuine issues of material fact in dispute as to whether Moore relied on any of Howard's misstatements or omissions, and whether these misstatements or omissions occurred "in connection with" the purchases of stock.

*Graphic Scanning*

Finally, the Court cannot characterize Howard's failure to carry out Brown's order to sell as constituting a mere retention of stock. *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017 (6th Cir.1979); *Goodman v. H. Hentz & Co.*, 265 F.Supp. 440 (N.D.Ill.1967).

Therefore, the Court finds that it would be inappropriate to grnat the Motion as to Counts XI and XII.

Accordingly, for the foregoing reasons,

IT IS ORDERED:

The Court grants defendants' Motion for Summary Judgment against Brown based on prescription on Counts II, IV, V, VI, VII, IX, X, XIII, XIV, XV and XVI.

The Court grants defendants' Motion for Summary Judgment on Counts IV and XIII, the unfair trade practices claims of both plaintiffs.

The Court grants defendant Edwards' Motion for Summary Judgment on Count II, because Edwards cannot be both the person and the enterprise under RICO.

The Court denies the defendants' Motion for Summary Judgment on all federal and state securities claims.

Plaintiff Brown's remaining counts: I, III, XI and XII.

Plaintiff Moore's remaining counts: I, III, V, VI, VII, VIII, IX, X; and Count II as to Defendant Howard.