JENNIE A. LAWAETZ, an individual; ERIK J. LAWAETZ, an individual; MONA L. DOANE, an individual; ROY LA-WAETZ, an individual; DAVID LAWAETZ, an individual who sues by and through his guardian Erik Lawaetz; and the LAWAETZ FAMILY PARTNERSHIP, Plaintiffs

v.

THE BANK OF NOVA SCOTIA, a Canadian Corporation and, JOHN OR JANE DOE ONE THROUGH TEN, Defendants

Civil Action No. 1986/102

District Court of the Virgin Islands

Div. of St. Croix

January 23, 1987

GERALD T. GRONER, ESQ., St. Croix, V.I., and W. H. C. VENABLE, ESQ., Mathews, Va., *for plaintiffs*

LLOYD DE VOS, ESQ., and WILLIAM L. BLUM, ESQ., St. Thomas, V.I., *for defendant Bank of Nova Scotia*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This RICO action is vehemently challenged by the defendant

135

bank as vexatious. We hold that the complaint survives the initial attack virtually intact. It is both timely and distinct from previous litigation and adequately pleads substantive charges of RICO and fraud. The conspiracy count, however, does not state a cognizable claim and will be dismissed.

## I. FACTS

Plaintiff Erik Lawaetz is the sole shareholder of the St. Croix Hotel Corporation, owner of the St. Croix by the Sea resort. Defendant Bank of Nova Scotia financed the Hotel's expansion throughout the 1970's. These transactions have formed the basis for litigation through the 1980's.

*The First Lawsuit*

In June 1981, the Hotel sued the Bank for fraud.[1] These are the facts underlying that suit. The Hotel began construction of a condominium complex in 1969. The Bank extended a $1 million loan at New York prime plus two percent and took back a mortgage and note secured by the hotel and condominium properties. The construction loan was repaid exclusively with the proceeds of condominium sales pursuant to the parties' agreement whereby the Hotel assigned the unit owners' mortgage notes to the Bank, which then reduced the construction debt accordingly. The condominium notes demanded nine percent interest and this rate exceeded the interest due on the master loan. To secure the Bank's position in the event of default, the Hotel executed its own note at prime plus two to back up the individual mortgagors.

In 1972, the parties struck a similar agreement for further expansion. Repayment extended through the 1970's, during which interest rates rocketed skyward. Consequently, the yield of the Hotel's collateral notes exceeded the nine percent due from the condominium owners. The Hotel alleged that the Bank took two measures. First, it held the Hotel primarily liable on its notes and calculated interest at the higher variable rate. And, based on the assumption that the already financially-ailing Hotel could not cover the debt service, the Bank induced the Hotel to execute a document entitled "Ratification Agreement and Novation of Existing Mortgage". This document effectively recast the 1972 construction loan to encompass the debts of the individual mortgagors, giving the Bank first priority over all of the Hotel's creditors and enabling

---

[1] St. Croix Hotel Corp. v. Bank of Nova Scotia, B81-00003.

it to foreclose on the resort's properties in the imminent bankruptcy proceeding.

On April 13, 1981, the Bank demanded payment of all outstanding indebtedness and seized a $152,000 certificate of deposit owed by Erik Lawaetz and his wife, Jennie. The Hotel filed for protection and reorganization under Chapter 11 and sued the Bank, alleging that its frauds forced the Hotel into bankruptcy.

The case was tried in December 1981 and resulted in a plaintiff's verdict of $750,000. The District Court granted the Bank a new trial on damages and in December 1983, a jury awarded the Hotel compensatory damages of $3.5 million. The Bank won its appeal, which resulted in another trial on both liability and damages. This third trial began in November 1984. The matter settled three days into the proceeding and was dismissed with prejudice.[2]

*The Second Lawsuit*

On May 6, 1986, various members of the Lawaetz family filed the present action asserting counts of fraud, conspiracy, conversion, breach of contract and civil RICO. The allegations of this suit begin in time with the execution of the aforementioned ratification agreement. (Complaint, para. 34–37.) As alleged in the earlier litigation, the purpose of that document was to make the Bank the top priority creditor. "Crystallization" of that position, however, depended on the agreement surviving the 120-day bankruptcy preference period, during which the Bank sought to avoid lending the Hotel additional operating expenses. Hence, the heart of this action: the Bank purportedly induced the plaintiffs to operate the Hotel with their own funds and efforts with a promise that it would soon be granted a substantial loan. (Complaint para. 19, 29, 37–41.)[3]

The plaintiffs invested approximately $582,000 during this period and this contribution, in addition to their uncompensated labor, gave rise to a "de facto family partnership." (Complaint, para. 10, 39, 41.) The partnership spent an additional $600,000 operating the business during the reorganization as a joint venture with the Hotel. (Id., para. 16, 43–44.) The Bank's demand of payment on

---

[2] A critical factor in the settlement was the Hotel's last minute discovery of intrabank communications that it believed documented the fraud allegations and forced the Bank to settle the matter.

[3] The Small Business Administration advanced other funds to the Hotel during this period. (Complaint, para. 41.)

April 13, 1981, and the Hotel's consequential filing under Chapter 11 spurred this suit.

## II. DISCUSSION

■■ The Bank advances this motion alternatively under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. In determining the sufficiency of the pleading, we are bound by the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). We are required, moreover, to view the factual allegations of the complaint as true. D. P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984).

■■ Consideration of matters outside the pleadings, such as the affidavits submitted by the plaintiffs, converts a motion to dismiss into one for summary judgment. Carter v. Stanton, 405 U.S. 669, 671 (1972). Summary judgment is proper if the nonmoving party cannot show a factual dispute warranting a trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552–53 (1986).

### The Bank's Defenses

A. *Statute of Limitations*

The Bank's first defense is that this action is timebarred.[4]

1) *The RICO Claims*

■■ The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., does not set a limitations period and thus one must be borrowed from the Virgin Islands as the forum of this suit. The Third Circuit instructs "that in borrowing state limitations for civil RICO claims courts must select, in each state, the *one* most appropriate statute of limitations for *all* civil RICO claims." Malley-Duff & Associates v. Crown Life Insurance Co., 792 F.2d 341, 349 (3d Cir. 1986) (U.S. appeal pending) (emphasis in

---

[4] We summarily reject the assertion of laches as a defense to this damage suit. The doctrine may only be invoked in equitable actions. An action for damages is timebarred solely by the statute of limitations. E.g., Sumner v. United States, 678 F.2d 202, 205 (Ct. Cl. 1982) (citations omitted); Nilsen v. City of Moss Point, Miss., 674 F.2d 379, 388 (5th Cir. 1982) (citations omitted); rev'd on other grounds 701 F.2d 556 (5th Cir. 1983). Accord EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 80 (3d Cir. 1984).

original) (citations omitted).[5] Because "RICO is a strictly statutory remedy to enforce statutory rights," the proper limitations provision is one "'applying generally to all statutory causes of action that have no express statute of limitations).'" 792 F.2d at 352–53 (quoting and adopting test of A.B.A. Task Force on Civil RICO Report at 389–91).

Malley-Duff involved Pennsylvania law and the Third Circuit chose for the RICO limitations "a residual 'catchall' statute of limitations for actions, *primarily based on statute*, that are not governed by any more specific period of limitations." 792 F.2d at 352 (emphasis added). Two Virgin Islands limitations statutes fit this description.

The general catchall provision, 5 V.I.C. § 31(2)(A), sets a ten-year deadline for "[a]n action for any cause not otherwise provided for in this section." Section 31(3)(B) provides a six-year deadline for "[a]n action upon a liability created by statute, other than a penalty or forfeiture."

██ Selection of either statute is consistent with Malley-Duff but the better choice is the six-year provision because it is more responsive to the Third Circuit's characterization of RICO as a purely statutory action while specifically fulfilling the purpose of Pennsylvania's catchall provision. Thus, to be timely, this action must have accrued after May 6, 1980. Malley-Duff, however, expressly deferred on the issue of when the statute of limitations begins running on a RICO claim. 792 F.2d at 345 n.8. We elect to adopt the prevailing view that a claim accrues when the plaintiff knows or should know of the wrongful conduct. See Compton v. Ide, 732 F.2d 1429, 1433 (9th Cir. 1984); Alexander v. Perlan Elmer Corp., 729 F.2d 576, 577 (8th Cir. 1984); Moore v. A. G. Edwards & Sons, Inc., 631 F. Supp. 138, 144 (E.D. La. 1986); A. J. Cunningham Packing v. Congress Financial Corp., 611 F. Supp.

---

[5] This holding is based on the Third Circuit's application of the three-prong test of Wilson v. Garcia, 105 S.Ct. 1938, 1943 (1985): 1) does state or federal law control characterization of the claim? (answer: federal); 2) should all RICO claims be characterized in the same way? (answer: yes, in accordance with local laws), and 3) what state statute of limitations characterizes the essence of the claim? (answer: a catchall statute).

532, 537 (W.D. Pa. 1985), rev'd on other grounds, 792 F.2d 330 (3d Cir. 1986).[6]

■ Accordingly, the RICO claims accrued either when the "smoking gun" memoranda were discovered in November 1984 or at any earlier time that it is shown that the plaintiffs knew or should have known of the Bank's purportedly unlawful behavior. Untimeliness is an affirmative defense and the Bank has the burden to prove it. Until it establishes facts to support a contrary finding, we will continue to view the RICO claims as timely. See Ingvoldstad v. Estate of Young, 19 V.I. 115 (D.V.I. 1982).

### 2) *Common Law Fraud*

■■ Under Virgin Islands law, fraud is governed by a two-year limitations period, 5 V.I.C. § 31(5)(A) (1986 Supp.) that begins to run when the act is discovered. 5 V.I.C. § 32(c). The plaintiffs affirm that they first learned of the purported fraud in November 1984 when the intrabank communications were discovered. The Bank opposes this contention without supporting documentation. As with the RICO claim, we view the fraud count as timely until the Bank proves it is not.

### 3) *Conversion and Breach of Contract*

These claims are based on the Bank's purported seizure of Erik and Jennie Lawaetz's certificate of deposit on April 13, 1981. It is maintained that the CD was comprised of personal funds that did not secure the Hotel debt.

■ Contract actions are governed by a six-year statute of limitations. 5 V.I.C. § 31(3)(A). The same limitation applies to conversion suits. § 31(3)(D). This action was filed five years and one month after it accrued and is, therefore, timely. Hence the Bank's motion with respect to the statute of limitations defense is meritless.

### B. *Res Judicata*

■ Next, the Bank contends that the doctrine of res judicata bars each plaintiff from asserting this suit.[7] This rule provides that

---

[6] Although state law is used to define a limitations period, federal law determines when that period begins to run. Moore, supra at 144; Clute v. Davenport Co., 584 F. Supp. 1562, 1577 (D. Conn. 1984) quoting IIT v. Cornfield, 619 F.2d 909, 929 (2d Cir. 1980).

[7] A settlement and dismissal with prejudice of an action constitutes a final judgment to be accorded its res judicata effect. E.g., Shlensky v. B. R. Dorsey, 574 F.2d 131, 144 n.9a (3d Cir. 1978).

when a final judgment has been entered on the merits of a case, "[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other 'admissible matter which might have been offered for that purpose.' The final judgment puts an end to the cause of action which cannot again be brought in litigation between the parties upon any ground whatever."

Nevada v. United States, 463 U.S. 123, 129–30 (1983) (citations omitted).

Thus this suit is barred if its claims are the same as those asserted by the Hotel and the Lawaetz family members are in privity with the St. Croix Hotel Corporation, plaintiff in the first action. Id. See Cramer v. General Telephone & Electronics Corp., 582 F.2d 259, 266 (3d Cir. 1978).

### 1) *Cause of Action*

██ ██ The Nevada Court recognized that causes of action are the same " 'if the evidence needed to sustain the second action would have sustained the first action'", Nevada, supra at 130 n.12 quoting the first Restatement of Judgments, § 61 (1942), or "if they arise from the same transaction." Id. quoting Restatement (Second) of Judgments § 24 (1982). Under the latter test, whether actions "are products of the same 'transaction' is to be determined by 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Id. The key inquiry is whether " 'but one right has been violated by a single legal wrong.'" Id. quoting Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 321 (1927).

██ The Hotel alleged in the first lawsuit alleged that the Bank fraudulently restructured its debt, a wrong consummated by the execution of the ratification agreement. By contrast, the Lawaetz family members charge here that after those acts the Bank induced them to maintain hotel operations with their own funds until the preference period for the ratification agreement passed. The complaints clearly plead frauds that are distinct in time, purpose, target and resulting injury. Whether analyzed under the

transactions test of the Second Restatement or the proof test of its predecessor, sufficiently different actions have been pleaded.

### 2) *Identities of the Parties*

■ Equally defective is the Bank's theory that the plaintiffs and Hotel share a single identity for res judicata purposes because each plaintiff was a joint venturer and creditor of the Hotel while Erik, as its sole shareholder, was also its alter ego. If true, and the alleged injuries resulted through these legal relationships, privity might arguably exist. However, this argument rests on assumed facts that the plaintiffs categorically deny by affadavit, each stating that

> . . . I at no time invested funds in the Hotel Corp. nor became a creditor of the Hotel Corp. during the relevant time periods of this suit. Rather at the inducement of the Bank I contributed proceeds of sales and loans against my interests in real estate to preserve the Hotel. In return, I and the other family members who contributed money and effort reserved the right to become direct owners in the Hotel in the future should the reorganization succeed. Had the Hotel Corp. been liquidated in bankruptcy, I understood I would not recover the money and effort I expended. The precise legal method of ownership and the formulae for distributing the ownership among the family members was left open pending the resolution of the bankruptcy case and with the proper advice of counsel.

Consideration of these documents require us to view this aspect of the defendant's motion as one for summary judgment and the factual dispute, of course, defeats this prong of the res judicata test as well. Celotex, supra at 2552–53.

### C. *RICO Defenses*

The complaint charges violations of each of RICO's substantive provisions as well as conspiracy. 18 U.S.C. § 1962(a)–(d). We will examine the Bank's defenses seriatim.

### 1) *Standing*

■■ Standing to assert a civil RICO claim is granted to "[a]ny person injured in his business or property by reason of violation of section 1962 . . . ." 18 U.S.C. § 1964(c). The plaintiffs need only show that they were damaged by conduct prohibited by § 1962. See Louisiana Power & Light Co. v. United Gas Pipe Line Company, 642 F. Supp. 781, 807 (E.D. La. 1986). Direct injury keys

the right to sue for a RICO violation and suits seeking damages for harm suffered derivatively will be dismissed for lack of standing. Warren v. Manufacturers National Bank of Detroit, 759 F.2d 542, 544–45 (6th Cir. 1985) (shareholder whose corporation was a RICO victim suffered an indirect injury and, therefore, lacked standing); Levey v. E. Stewart Mitchell, Inc., 585 F. Supp. 1030, 1034–35 (D. Md. 1984) aff'd 762 F.2d 998 (3d Cir. 1985) (primary investor and guarantors of companies succeeding corporate RICO victim suffered an indirect injury, and, therefore, lacked standing).

 As previously noted, the Bank contends that Eric Lawaetz suffered only a shareholder's derivative injury and all of the plaintiffs were creditors and joint venturers whose claims should have been vindicated by the bankruptcy trustee. We have already held that these contentions were refuted for purposes of this motion by the plaintiffs' affidavits. Moreover, the complaint plainly alleges that the Bank fraudulently induced the plaintiffs to expend money and labor—purported injuries suffered by each plaintiff directly. We hold, therefore, that the plaintiffs have standing to bring this action.[8]

*2) Pattern*

 Next, the Bank argues that the complaint fails to allege a pattern of racketeering activity. The pattern requirement is an essential element of every RICO allegation, mandating "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The predicate acts are enumerated in § 1961(1) and include mail, wire, transportation and bankruptcy fraud—the crimes forming the basis of this complaint.[9]

 Preliminarily, the RICO plaintiff must plead the facts of predicate frauds with particularity pursuant to Fed. R. Civ. P. 9(b). Haroco v. American National Bank, 747 F.2d 384, 406 (7th Cir. 1984) aff'd 105 S.Ct. 3291 (1985) (per curiam). See Seville Industrial

---

[8] We summarily reject the Bank's claim that the count alleged under § 1962(c) is defective because it names the Bank as both a RICO person and enterprise. See B. F. Hirsh v. Enright Refining Co., Inc., 751 F.2d 628, 633–34 (3d Cir. 1984). As noted by the plaintiffs, the "persons" at whom Count IV is aimed are the Doe defendants. Hence we perceive no defect.

[9] Extortion is alleged as an additional predicate act. On the face of the complaint, its sufficiency is questionable but our holding that the frauds have been properly pled averts the need for further consideration.

143

Machinery v. Southmast Machinery, 742 F.2d 786, 791 (3d Cir. 1984) cert. denied, 469 U.S. 1211 (1985). Seville restated the clear rule of this circuit that the particularity requirement does not dispense with the flexibility underscoring the federal rules of pleading.

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

Seville, supra at 791.

■ Pleading mail and wire fraud requires that "the defendant agreed to participate in a scheme to defraud and that he caused the mails [or wires] to be used in furtherance of the scheme." United States v. Sturm, 671 F.2d 749, 751 (3d Cir.), cert. denied, 459 U.S. 842 (1982) citing United States v. Pereira, 347 U.S. 1, 8 (1954); United States v. Pearlstein, 576 F.2d 531, 534 (3d Cir. 1978), cert. denied, Rodgers v. United States, 445 U.S. 961 (1980); United States v. Dreer, 457 F.2d 31, 33 (3d Cir. 1972). See United States v. Giovengo, 637 F.2d 941, 944 (3d Cir. 1980), cert. denied, 450 U.S. 1032 (1981) (wire fraud statute interpreted in pari materia with mail fraud statute).

■ Transportation fraud is prescribed by 18 U.S.C. § 2314 and entails "(1) the devising of a scheme or artifice to defraud or obtain money by false pretenses or representations and (2) causing or inducing an intended victim to travel in interstate commerce with intent to defraud that person of money or property having a value of $5,000 or more." United States v. Edwards, 516 F.2d 913 (8th Cir. 1975).

■ Finally, bankruptcy fraud falls within the prescription of § 1001, outlawing the intentional making of a material and false statement to a federal court. See United States v. Chandler, 752

F.2d 1148, 1150 (6th Cir. 1985); United States v. Race, 632 F.2d 1114, 1116 (4th Cir. 1980).[10]

The precise manner in which these frauds were committed are not pleaded nor is such precision required. Seville, supra at 791. The complaint is sufficiently explicit to put the Bank on notice of the charges against it and this is all Rule 9 mandates. Id.

We must now address the thorny issue of whether the racketeering acts pled herein constitute a pattern. In Sedima, S.P.R.L. v. Imrex Co., Inc., 105 S.Ct. 3275 (1985), the Supreme Court recognized that civil "RICO is evolving into something quite different from the original conception of its enactors." Id. at 3287. That purpose was to provide a civil remedy for victims of organized crime. Id. at 3289–91. Sedima noted, however, that only nine percent of the pending civil cases targeted professional criminals. Id. at 3287 n.16.

The absence of a concrete concept of pattern was pinpointed as the primary cause of this abuse. Id. at 3287. In dicta that has become the universal starting point for defining a RICO pattern, the Court stated

> The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: 'The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combined to produce a pattern.' S.Rep. No. 91-617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself required the showing of a relationship . . . . So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern . . . ." 116 Cong. Rec. 18940 (1970) (statement of Sen. McClellan). See also id., at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes,

---

[10] Section 1001 applies with equal force to the federal courts. See United States v. Bramblett, 348 U.S. 503, 509 (1955).

145

results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. Iannelli v. United States, 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

105 S.Ct. at 3285 n.14.

Three views interpreting the "continuity plus relationship" requirement have emerged. The most liberal approach holds that minimally, two related predicate acts committed in furtherance of a single episode must be pled. R.A.G.S. Couture, Inc. v. Hyatt, 774 F.2d 1350, 1354–55 (5th Cir. 1985). But see Smokey Greenshaw Colton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 785 F.2d 1274, 1280–81 n.7 (5th Cir. 1986). See also Conan Properties, Inc. v. Mattel, Inc., 619 F. Supp. 1167, 1170 (S.D.N.Y. 1985) (two related acts arising from the same scheme pleads a pattern); Trak Microcomputer Corp. v. Wearne Bros., 628 F. Supp. 1086, 1096 (N.D. Ill. 1985) (single episode may suffice); Graham v. Slaughter, 624 F. Supp. 222, 224–25 (N.D. Ill. 1985) (single episode may suffice).

By contrast, the restrictive view holds that a pattern must be comprised of multiple episodes. Superior Oil Company v. Fulmer, 785 F.2d 252, 255–57 (8th Cir. 1986); Garbade v. Great Divide Mining and Milling Corp., 645 F. Supp. 808, 815 (D. Colo. 1986); Fleet Management Systems v. Archer-Daniels-Midland Company, 627 F. Supp. 550, 559–60 (C.D. Ill. 1986); Medallion TV Enterprises v. Selectv of California, 627 F. Supp. 1290, 1297 (C.D. Cal. 1986); Allington v. Carpenter, 619 F. Supp. 474, 477–78 (E.D. Cal. 1985). The rationale of this requirement is to constrict RICO's reach to organized criminal activity. See e.g., Fleet Management, supra at 559–60.

Significantly, the most widely-cited case in support of the multiple episodes requirement, Northern Trust Bank/O'Hare v. Inryco, Inc., 615 F. Supp. 828 (N.D. Ill. 1985), was rejected by the Seventh Circuit in favor of a flexible inquiry into whether the "predicate acts [are] ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., 'transactions somewhat separated in time and place.'" Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir. 1986) [quoting Graham v. Slaughter, 624 F. Supp. 222, 225 (N.D. Ill. 1985)]. Factors underlying this determination should include: "the number

146

and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." Id.

Moderate views were also adopted in Louisiana Power & Light Company v. United Gas Pipe Line Company, 642 F. Supp. 781, 809 (E.D. La. 1986) (a pattern may be constituted by a single fraudulent scheme "having an independent and repeated harmful significance for the plaintiff") and Knonfeld v. First New Jersey National Bank, 638 F. Supp. 1454, 1472 (D.N.J. 1986) (pattern is constituted by a single fraud inflicted on several victims).

The Third Circuit has yet to define the pattern requirement although two recent criminal appeals recognize that predicate acts must be related. United States v. Grayson, 795 F.2d 278, 289-90 (3d Cir. 1986); United States v. Ellison, 793 F.2d 942, 949-50 (3d Cir. 1986).[11] Guidance may also be gleaned from dictum in Malley-Duff terming Northern Trust as "very restrictive". 792 F.2d 341, 353 n.20. The district courts within the circuit have split on this issue. Compare Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mutual Insurance Company, 641 F. Supp. 297, 311-12 (E.D. Pa. 1986) (single fraudulent scheme does not constitute a pattern); Paul S. Mullin & Associates, Inc. v. Bassett, 632 F. Supp. 532, 541 (D. Del. 1986) (multiple episodes are generally required); United States v. Freshie Company, 639 F. Supp. 442, 445 (E.D. Pa. 1986) (single episode may constitute a pattern); Knonfeld, supra at 1472 (single fraud committed against multiple victims may constitute a pattern).

We reject the restrictive regime as legally unsupportable. RICO's language and legislative history are devoid of a multiple episode requirement. Freshie, supra at 445; Trak Microcomputer, supra at 1096. Sedima, moreover, admonishes against placing reactionary judicial restrictions on civil RICO plaintiffs. 105 S.Ct. at 3286. RICO must "be liberally construed to effectuate its remedial purposes." Id. quoting Pub.L. 91-452, § 904(a), 84 Stat. 947.

 Sedima renders the liberal view equally unacceptable. To constitute a pattern, predicate acts must be related and continuous. Sedima, supra at 3285 n.14 quoting S.Rep. No. 91-617, p. 158

---

[11] In a pre-Sedima case, the Third Circuit affirmed without opinion a district court holding that "a single, ongoing scheme to defraud by obtaining bribes or kickbacks, which involve a series of unlawful acts, can establish a pattern for purposes of RICO . . . ." United States v. Salvitti, 451 F. Supp. 195 (E.D. Pa.), aff'd without opinion, 588 F.2d 822 (3d Cir. 1978).

(1969). Logic defies terming two acts as continuous. Rather, multiple victims of a single sham or acts attenuated in time, but not sporadic, are required. Morgan v. Bank of Waukegan, supra at 975; Freshie, supra at 445. See Louisiana Power, supra at 809. Thus, we elect to adopt the flexible approach espoused by the Seventh Circuit and decide pattern disputes on a case-by-case basis. The key is to plead a persistent course of conduct and either a single ongoing scheme or multiple episodes may suffice if these acts are also related. Morgan, supra at 975. Accord Freshie, supra at 444.

 The plaintiffs allege that the Bank sustained its fraud upon them over at least one year via the phones, the mail and various transportation modes.[12] They also accuse it of falsely representing itself as a top priority creditor to the bankruptcy court. And each of these acts were purportedly part of a single design to restructure an improvidently granted construction loan.

Taken together, the allegations plead a pattern of racketeering activity because of the length of time involved and the number of victims targeted by the predicate acts. The tentacles of this single scheme as detailed in the complaint are simply too many to hold otherwise.

### 3) *Conspiracy*

Paragraph 13 of the Complaint identifies the John Doe defendants as persons "employed by or associated with the Bank of Nova Scotia in various capacities, and have or do conduct or participate in the conduct of the affairs of the Bank of Nova Scotia." The Bank moves for dismissal of the count charging it with conspiring with these defendants under the well-established bar against intracorporate conspiracy.

 The majority rule is that conspiracy cannot lie against the corporate entity for the concerted action of its employees who violate RICO on its behalf. McLendon v. Continental Group, Inc., 602 F. Supp. 1492, 1510, 1512 (D.N.J. 1985). See Medallion TV Enterprises, supra at 1301 n.7; Chambers Development Co., Inc. v. Browning-Ferris Industries, 590 F. Supp. 1528, 1541 (W.D. Pa. 1984) aff'd 791 F.2d 919 (3d Cir. 1986); Yancoski v. E. F. Hutton & Co., Inc., 581 F. Supp. 88, 97 (E.D. Pa. 1983); Landmark Savings

---

[12] The complaint states without explanation that the fraud continues today. In accordance with Rule 9(b), we find that the predicate acts span the time from the Bank's conception of the plan to its demand for repayment—approximately a one year period. (Complaint, para. 34, 42.)

148

& Loan v. Rhoades, 527 F. Supp. 206, 209 (E.D. Mich. 1981). In the context of civil litigation, the rationale is that "[a] corporation cannot conspire with itself because a corporation can act only through its officers and employees. While conducting company business, they cannot conspire with the corporation of which they form an indispensable part. A corporate conspiracy also requires more than the collective judgment of two individuals within the same entity, for their conduct, if challenged, becomes that of the single, corporate entity." Jagielski v. Package Machine Co., 489 F. Supp. 232, 233 (E.D. Pa. 1980) (footnotes omitted).[13]

An exception is recognized where the plaintiff alleges in good faith that the employees acted solely in their own interests and not for their employer. McLendon, supra at 1510 (citations omitted). Accord Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769 and n.15 (1984); Jagielski, supra at 233. Finally, a minority of courts have found that RICO's policies transcend the intracorporate bar. Callan v. State Chemical Mfg. Co., 584 F. Supp. 619, 623 (E.D. Ill. 1984); Saine v. ALA, Inc., 582 F. Supp. 1299, 1307 n.9 (D. Colo. 1984); Mauriber v. Shearson/American Express, Inc., 567 F. Supp. 1231, 1241 (S.D.N.Y. 1983).

■ Interestingly, the plaintiffs have chosen to forego urging adoption of this view or application of the exception. Rather they contend only that the naming of an unidentified associate negates the defense of intracorporate conspiracy. This claim is undercut by Paragraph 13's description of the associates as bank agents. And even if these associates are attributed outsider status, the conspiracy count must still be dismissed for vagueness: the Bank simply has no notice of subject matter of the purported conspiracy, much less the identity of its co-conspirators. See McLendon, supra at 510. Discovery on the substantive counts may, of course, provide facts to justify reinstating this charge at a later date.

## III. CONCLUSION

In accordance with the foregoing, we hold that the conspiracy count alleged herein shall be dismissed without prejudice. The motion of the defendant is otherwise denied.

---

[13] By contrast, a corporation and its agent are liable for criminal conspiracies. See e.g., McLendon, supra at 1511.

## ORDER

THIS MATTER is before the Court on the alternative motions of defendant Bank of Nova Scotia for summary judgment and to dismiss the above-captioned action. Having filed a memorandum opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT Count I of the complaint charging conspiracy is DISMISSED WITHOUT PREJUDICE, and

THAT the motion of the defendant is DENIED in all other respects.