Joseph J. **BANDAS,** et al., Appellants,

v.

**CITIZENS STATE BANK OF SILVER LAKE,** et al., Respondents.

No. C7–87–1184.

Court of Appeals of Minnesota.

Sept. 29, 1987.
Review Granted Nov. 24, 1987.

Scott B. Lundquist, Austin & Roth, Michael D. Miller, Minneapolis, for appellants.

Reed Harley Glawe, New Ulm, for respondents.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and LOMMEN,[*] JJ.

## OPINION

A. PAUL LOMMEN, Judge.

Appellants challenge a judgment dismissing their claims that allege respondents charged usurious interest rates and engaged in a pattern of racketeering. We affirm the trial court's decision on the usury claims as to 17 of 18 loan obligations and reverse as to one loan obligation. We affirm the trial court's decision regarding the racketeering claim.

## FACTS

Between January 10, 1983 and June 5, 1985, appellants obtained 18 agricultural loans from respondent Citizens State Bank of Silver Lake, a state-chartered, federally-insured bank. The principal on each loan was less than $100,000. The annual interest rate on 17 of the 18 loans ranged from 13.75% to 15.5%. The remaining loan, evidenced by a promissory note dated November 30, 1984, was for $36,000 and the stated annual interest rate was 14.25%. However, a "loan origination fee" of $540 (1.5%) was also charged. Since this note was due in 14 days, the effective interest rate became 51.52% when the loan origination fee was included in the calculation.

Appellants sued respondents, alleging the interest rates on all 18 loans were usurious under Minn.Stat. § 334.011 (1982). Appellants further alleged that respondents violated 18 U.S.C. § 1962(c) (1984), the Racketeer Influenced and Corrupt Organizations Act (RICO) by charging 51.52% interest on the $36,000 loan. Respondents moved to dismiss the suit for failure to state claims upon which relief could be granted. The trial court granted respondents' motion. Judgment on these claims

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

was entered October 6, 1986 and an appeal was filed November 17, 1987. By order dated January 21, 1987, this court dismissed the appeal as untimely because not all claims in the action had been finally adjudicated. A final order for judgment was filed April 23, 1987 and from this final order, the appeal is now properly before this court.

## ISSUES

1. Did the trial court err in ruling the rates of interest charged were not usurious?

2. Did the trial court err in ruling that respondents' action did not constitute a pattern of racketeering?

## ANALYSIS

Appellants claim the allowable interest rates on agricultural loans of less than $100,000 are governed exclusively by Minn. Stat. § 334.011, subd. 1 (1982). That statute provides interest rates shall not exceed 4½% in excess of the discount rate on 90 day commercial paper in effect at the Minneapolis Federal Reserve Bank.

Respondents claim they charged permissible rates under Minn.Stat. § 53.04, subd. 3a (1982), pursuant to the most favored lender doctrine. Section 53.04 allows industrial loan and thrift companies to charge up to 21.75% interest on loans. Although respondent Citizens State Bank of Silver Lake is not an industrial loan and thrift company, it argues the most favored lender doctrine allows state-chartered, federally insured banks to charge the 21.75% rate.

1. *Usury claim*

This court has held that state-chartered, federally-insured banks enjoy most favored lender status. *First Bank East v. Bobeldyk*, 391 N.W.2d 17, 19 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Sept. 24, 1986) (most recently followed in *Walsh v. First State Bank of Pennock*, 409 N.W.2d 5 (Minn.Ct.App.1987)).

Under the most favored lender doctrine, a lender may charge the highest rate permissible for the same class of loan. *Bobeldyk*, 391 N.W.2d at 19. This court has determined the permissible rate for an agricultural loan is the higher of the effective rates in sections 53.04 and 334.011. *See Dahl v. Lanesboro State Bank*, 399 N.W.2d 621, 623 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987). The parties agree the interest rates on 17 of the 18 loans do not exceed 21.75% per annum. Consequently, respondents charged a legally enforceable rate on those 17 loans.

The 18th loan stated an interest rate of 14.25%. However, if the $540 loan origination fee is included in the calculation, the annual interest rate is 51.52%. Respondents argue the loan origination fee should not be included as interest in determining whether the loan is usurious.

Section 53.04, subd. 3a allows collection of fees other than interest to the same extent permitted on loans made under the authority of Chapter 56. Interest is defined in Chapter 56 as follows:

"Interest" means all charges payable directly or indirectly by a borrower which are imposed directly or indirectly by the licensee as an incident to the loan, however denominated, including interest, discount, loan fee, or credit or investigation fee, but shall not include permissible default or deferment charges, lawful fees for any security taken, insurance charges or premiums, court cost, or other charges specifically authorized by law.

Minn.Stat. § 56.001 (1984). According to the definition, it does not matter how the $540 origination fee is denominated. Since the origination fee is a fee "incident to the loan" it comes within the meaning of interest.[1] Consequently, respondents charged an impermissible rate of interest on the $36,000 loan dated November 30, 1984.

*RICO claim*

Appellants claim that respondents violated 18 U.S.C. § 1962(c) (1984) by con-

---

1. Minn.Stat. §§ 56.131, subd. 2 and 56.155 (1984) designate various permitted charges which are not interest. Loan origination fee is not listed as a permissible additional charge.

ducting an enterprise engaged in the collection of unlawful debts. "Unlawful debt" for RICO purposes means a loan with an interest rate at least twice that allowed by state or federal usury laws. 18 U.S.C. § 1961(6) (1984). In this case, the 51.52% interest rate exceeds twice the allowed rate of 21.75%.

The Supreme Court in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), stated a violation of section 1962(c) requires (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Id.* at 496, 105 S.Ct. at 3285. To establish a "pattern of racketeering activity," 18 U.S.C. § 1961(5) (1984) requires there be at least two unlawful acts. *Id.*[2] Respondents engaged in a sole act of charging an excessive interest rate. This one action does not establish the minimum requirements for a RICO claim.

## DECISION

The trial court properly determined the interest rates on 17 of 18 loans were not usurious. The trial court properly determined appellant did not establish a claim under 18 U.S.C. § 1962(c). The trial court erred in determining the interest rate charged on the $36,000 loan dated November 30, 1984 was not usurious.

Affirmed in part, reversed in part and remanded.

CRIPPEN, Judge, concurring specially.

Appellant argues strenuously that we erred in *Bobeldyk*, and that the decision there should be reconsidered. He contends that the most favored lender status recognized for national banks under the 1864 National Bank Act was based on a unique

clause of this statute that is not found in the 1980 Federal Depository Institutions Deregulation and Monetary Control Act, the recent legislation which was aimed at protecting state banks from some local regulations. A clause in the 1864 Act, not found in the 1980 Act, declares the freedom to charge rates permitted for another class of banks. Our earlier decisions do not include a response to appellant's argument. Recognizing, however, the number of decisions already premised on the analysis of *Bobeldyk*, it is appropriate that this panel of judges elect against reviewing that decision.

**2.** The Eighth Circuit in *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986) (most recently followed in *Henning v. First Bank of Worthington* (8th Cir. No. 86–5320, July 7, 1987)), required that there be at least two unlawful schemes to establish a pattern of racketeering. *Id.* at 254–57. The Eighth Circuit's view is at odds with decisions in other circuits requiring only multiple unlawful acts within a single scheme or plan of activity. *See U.S. v. Ianniello*, 808 F.2d 184, 192 (2nd Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 3229, 97 L.Ed.2d 736

(1987); *Lawaetz v. Bank of Nova Scotia*, 653 F.Supp. 1278, 1287 (D.V.I.1987); *Roberts v. Smith Barney, Harris, Upham & Co., Inc.*, 653 F.Supp. 406, 411 (D.Mass.1986); *Louisiana Power & Light Company v. United Gas Pipe Line Company*, 642 F.Supp. 781, 809 (E.D.La.1986). In the present case, however, respondents have performed only one isolated act and this is not enough to establish a RICO claim under any interpretation of "pattern of racketeering activity."