John J.B. JONES, an individual, Plaintiff,

v.

BASKIN, FLAHERTY, ELLIOT AND MANNINO, P.C.; Philip Baskin, an individual; Raymond N. Baum, an individual; James B. Brown, an individual; Victor R. Delle Donne, an individual; Robert E. Fiorito, an individual; James J. Flaherty, an individual; Linda L. Goldston, an individual; Kenneth E. Lewis, an individual; R. Darryl Ponton, an individual; Charles E. Wittlin, an individual; Nelson P. Young, an individual; and Swartz Albanesi Izenson & Company, a Partnership, Defendants.

Civ. A. No. 86-2533.

United States District Court, W.D. Pennsylvania.

Sept. 24, 1987.

John J.B. Jones, Pittsburgh, Pa., pro se.

Carl H. Hellerstedt, Jr., H. Yale Gutnick, W. Thomas McGough, Mark J. Gesk, Wayman Irvin & McCauley, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

### FACTS:

On March 31, 1985, sixty year old John J.B. Jones was dismissed as an attorney by the law firm of Baskin Flaherty Elliott and Mannino, P.C., a professional corporation ["BFEM"]. Jones' suit alleges that his dismissal was the result of age discrimination.

He further alleges that BFEM, a number of BFEM attorneys (Baskin, Baum, Brown, Donne, Fiorito, Flaherty, Goldston, Lewis, Ponton and Wittlin), a former BFEM attorney (Young) and BFEM's accountants, Swartz, Albanesi, Izenson & Co. ["SAI"], were parties to a tax fraud conspiracy involving improper reporting of fee income held in escrow accounts, and delayed reporting of paychecks to employees.

Jones brought suit under the Age Discrimination in Employment Act ["ADEA"], the Employee Retirement Income Security Act of 1974 ["ERISA"], and the civil enforcement provisions of the Racketeer Influenced and Corrupt Organizations Act ["RICO"]. There are also pendent Pennsylvania state common law claims for breach of contract, conspiracy, breach of fiduciary duties, indemnification and for an accounting.

BFEM, the individual defendants who are attorneys at BFEM, Young and SAI have moved to dismiss the entire complaint, or, in the alternative, to stay the proceedings pending arbitration.

### DISCUSSION:

#### I. Civil RICO Claims

Plaintiff's complaint alleges a number of violations of section 1962(c) of the RICO statute. 18 U.S.C. § 1962(c). The defendants' motions to dismiss challenge Jones' standing to sue under the RICO statute and assert that the complaint fails to allege commission of any predicate acts, known as "racketeering activities," required under the RICO statute. 18 U.S.C.A. § 1961(1). Even if such predicate acts were alleged, the defendants maintain that these acts did not constitute a "pattern of racketeering activity" as required under § 1962(c). The law firm, BFEM, named as the RICO "enterprise" in the complaint, requests dismissal of the RICO count as to BFEM on the grounds that § 1962(c) does not permit civil prosecution of a "person" also named as an "enterprise."

#### A. Does The Plaintiff Have Standing To Sue Under RICO?

The defendants challenge the plaintiff's standing to prosecute this civil RICO ac-

tion. Because the issue of justiciability is dispositive of the various challenges to the plaintiff's RICO claims, we shall take up the standing issue first.

Section 1964(c) grants standing for civil RICO claims to "[a]ny person injured in his business or property by reason of violation of section 1962." 18 U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 495, 105 S.Ct. 3275, 3285–3286, 87 L.Ed.2d 346 (1985). In other words, a plaintiff need show damage by conduct prohibited by section 1962. *Lawaetz v. Bank of Nova Scotia,* 653 F.Supp. 1278, 1284 (D.V.I. 1987).

The plaintiff's complaint alleges injury "in his business, property rights, contractual rights and employment" due to the violations of § 1962(c), although such injury is not explained. Complaint, p 37. The complaint refers to the possibility of future tax liability for errors in his personal income tax returns made in reliance on allegedly fraudulent K–1 supplied to him by BFEM's predecessors. Complaint, pp 99–100. However, the hypothetical possibility of a future tax prosecution does not present a ripe dispute for this court, and will not suffice as an injury to confer standing. *See generally Thomas v. Union Carbide Agric. Products Co.,* 473 U.S. 568, 580–581, 105 S.Ct. 3325, 3333; 87 L.Ed.2d 409, 419–420 (1985); 13A C. Wright, A. Miller, J.E. Cooper, *Federal Practice and Procedure* § 3532 (Supp.1987) (The central concern of ripeness determination "is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.").

In his July 13, 1987 Brief In Opposition, the plaintiff alleges that he suffered injury in the form of understated partnership profits due to the fraudulent concealment of escrow payments. Plaintiff's Brief In Opposition To Defendant Swartz Albanesi Izenson & Co.'s Supplemental Motion To Dismiss, p. 4. Injury is also alleged for a reduction in capital payout upon the plaintiff's termination by BFEM, due to the deferred reporting of paychecks to "numerous shareholder employees" in December of 1983 and 1984. Id. at 5. Accepting these allegations of injury as true, the plaintiff's standing depends upon whether or not the alleged injuries were caused by the acts which violated § 1962(c).

While the alleged tax frauds may have been the purpose behind the alleged bookkeeping improprieties which caused the plaintiff's pecuniary losses, neither the acts of tax fraud nor mail fraud themselves directly caused the injuries suffered by the plaintiff. The injuries alleged by the plaintiff were the direct result of the internal bookkeeping of BFEM and its predecessors, not the mail (or tax) frauds, which are the violations under § 1962(a).

According to *Sedima,* a plaintiff has standing to sue under RICO only "to the extent that he has been injured ... by the conduct constituting the violation." *Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285–3286, 87 L.Ed.2d at 359. "Direct injury keys the right to sue for a RICO violation and suits seeking damages for harm suffered derivatively will be dismissed for lack of standing." *Lawaetz v. Bank of Nova Scotia,* 653 F.Supp. at 1284 (family members had standing to bring civil RICO suit against bank where they expended personal funds in reliance on bank's fraudulent inducement that it would provide a substantial loan, thereby suffering direct injury). Standing to maintain a private civil RICO action depends on whether the plaintiff suffered "direct injury" by the conduct which violates section 1962. *Id.; see also Cenco v. Seidman & Seidman,* 686 F.2d 449, 457 (7th Cir.), *cert. denied* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982) (auditors used as "tool" of RICO enterprise were injured indirectly, therefore lacked standing); *Gilbert v. Prudential-Bache Securities, Inc.,* 643 F.Supp. 107, 109 (E.D. Pa.1986) (securities investors lacked standing under section 1962(a) where the defendants' investment of proceeds was not causally related to any injury to the plaintiffs); *Levey v. E. Stewart Mitchell, Inc.,* 585 F.Supp. 1030, 1034–1035 (D.Md.), *aff'd* 762 F.2d 998 (4th Cir.1985) (primary investors and guarantors of companies succeeding corporate RICO victim suffered an indirect injury and therefore lacked standing).

In another case involving the discharge of a white-collar employee, a bank vice-president was fired after he reported banking irregularites to the Controller of the Currency which involved questionable financial activity by the bank's chairman. *Morast v. Lance,* 807 F.2d 926 (11th Cir. 1987). The discharged bank vice-president brought a civil RICO action. The Eleventh Circuit found that the vice-president "was not fired because he refused to participate in the bank's illegal scheme." *Id.* at 933. *Morast v. Lance* held that the vice-president lacked standing because the plaintiff's "injury, his discharge, did not flow directly from the predicate acts, the defendants' banking violations." *Id.* They concluded:

> Morast is not using the RICO statutes to stop the alleged illegal practices; rather, he is attempting to use the RICO statutes as a source of recovery for the loss of his job.

807 F.2d at 933; *see also Heinold v. Perlstein,* 651 F.Supp. 1410, 1411–1412 ((E.D. Pa.1987) (no standing in civil RICO action where plaintiff's allegation of injury is to an expectation interest created by a contract); *Rich Maid Kitchens v. Pa. Lumbermens Mut. Ins Co.,* 641 F.Supp. 297, 311 (E.D.Pa.1986) (denies standing to bring civil RICO suit where there was no causal relationship between injury and defendant's investment of proceeds, the violation under section 1962 (a) or (b)); *Icon Group, Inc. v. Mahogany Run Development Corp.,* 112 F.R.D. 201, 205–206 (D.V.I.1986) (no standing for civil RICO action by one of seventeen investors and tenants-in-common in condominiums in the absence of joinder of the co-owners).

█ In the present action, as in *Morast v. Lance,* the injuries alleged by the plaintiff did not flow directly from the conduct which allegedly violated section 1962. Jones claims he suffered loss of partnership income and reduced capital payout upon termination by BFEM. The predicate acts alleged in this suit are instances of mail fraud, the mailing of fraudulent tax returns. While the law firm may have perpetrated the identical financial reporting sleight-of-hand on its calculation of payments to Jones as on its fraudulent tax returns, the former are not violations under § 1962 and the latter were not causally related to the injuries. Jones had not even reported the tax irregularities to the authorities, as had the bank vice-president in *Morast v. Lance.* In the absence of direct injury to Jones due to any of the acts of mail fraud which violated § 1962, Jones has no standing to maintain the civil RICO claims. We therefore grant the motions to dismiss the RICO claims against all defendants.

## II. ADEA Claims

Jones claims that he was discharged from his position as an attorney with BFEM due to age discrimination in violation of the Age Discrimination in Employment Act ["ADEA"]. Complaint, par. 47; 29 U.S.C.A. §§ 621 et seq. (Supp.1987). BFEM and the present and former BFEM attorneys have moved for dismissal of this claim, arguing that Jones does not qualify as an "employee" under the ADEA, and therefore is not entitled to its protection. Former BFEM attorney Young also asserts that because he had not been named individually in Jones' previous EEOC complaint, he cannot be named as an individual defendant under the ADEA.

### A. Is Jones An "Employee" Under The ADEA?

The ADEA defines an employee as "an individual employed by any employer," and excludes only elected officials and their personal staff members. 29 U.S.C.A. § 630(f). An employer is defined as "a person engaged in an industry affecting commerce who has twenty or more employees . . . ." 29 U.S.C.A. § 630(b). "Person" is defined as "one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized group of persons." 29 U.S.C.A. § 630(a). The defendants have not challenged Jones' allegation that BFEM is a professional corporation with twenty or more employees. Complaint, par. 44. These statutory definitions do not specify whether an attorney who is employed by a professional corporation in

which he owns shares is an "employee" within the ADEA.

Federal cases construing the definition of "employee" under other statutes intended to outlaw discrimination in employment settings offer persuasive, albeit sparse, interpretive guidance. *See Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). The Fair Labor Standards Act of 1938, 29 U.S.C.A. § 203(a), (d), (e)(1) (Supp.1987) ["FLSA"], and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e(a), (b), (f) (Supp.1987) ["Title VII"] both use definitions of "employer" and "employee" that are nearly identical to those in the ADEA.

The Third Circuit has yet to decide whether a shareholder in a professional corporation is an "employee" under ADEA. The Second Circuit has held that such shareholders are protected under the ADEA, *Hyland v. New Haven Radiology Associates, P.C.,* 794 F.2d 793 (2d Cir.1986) ["Hyland"], while the Seventh Circuit found that accountants who were shareholders in a professional corporation should not be counted toward the total number of employees for the purposes of Title VII coverage. *EEOC v. Dowd & Dowd, Ltd.,* 736 F.2d 1177, 1178 (7th Cir.1984).

In *EEOC v. Zippo Manufacturing Co.,* the Third Circuit set out the standard for determining employee status under ADEA. 713 F.2d 32, 38 (3rd Cir.1983) (finding that district sales managers were not employees, but rather independent contractors). That standard follows the hybrid standard for the substantive prohibitions of discrimination used for Title VII, combining the common law "right to control" standard with the "economic realities" standard applied in FLSA cases. *Id.*

The common law "right to control" test inquired into whether the employer "had the right to determine not only what work should be done but how it should be done." *Id.* at 36; *see United States v. Silk,* 331 U.S. 704, 714 n. 8, 67 S.Ct. 1463, 1468 n. 8, 91 L.Ed.2d 1757 (1947). The FSLA "economic realities" test looks to "the degree of [economic] dependence of alleged employees on the business with which they are connected ... that indicates employee status." *Id.* at 37 (*quoting Usery v. Pilgrim Equipment Company, Inc.,* 527 F.2d 1308, 1311 (5th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976). The hybrid approach "looks at the economic realities of the situation but focuses on the employer's right to control the employee as the most important factor in determining employee status." *Id.* at 37 (*quoting Hickey v. Arkla Industries,* 699 F.2d 748, 751 (5th Cir.1983)).

The defendants argue that Jones' position as a shareholder in a professional corporation was more closely analagous to that of a partner in a law partnership than to an employee. It is unsettled whether or not members of a partnership are employees under ADEA. In *Hishon v. King & Spaulding,* the Court found "nothing in the statute or the legislative history [of Title VII] that would support such a *per se* exemption." 467 U.S. 69, 78–79. 104 S.Ct. 2228, 2235, 81 L.Ed.2d 59 (1984). Justice Powell's concurrence stated his understanding that "the Court's opinion does not require that the relationship among partners be characterized as an 'employment' relationship to which Title VII would apply." *Id.* at 79, 104 S.Ct. at 2236. A number of cases have concluded that those individuals properly classified as partners are not considered employees under the anti-discrimination statutes. *See Hyland,* 794 F.2d at 797; *Burke v. Friedman,* 556 F.2d 867, 869 (7th Cir.1977) (where an employer must have 15 or more employees to be liable under Title VII, the number of partners in an accounting firm were not to be counted toward the total number of employees); EEOC decision No. 85–4, 2 Emp. Prac. Guide (CCH) par. 6846, at 7040 (partners not included in employer coverage count). Assuming that the defendants are correct that the ADEA should be construed to afford no protection for age discrimination against partners, we must decide whether or not Jones is properly classified as a partner, and thus not an employee under ADEA.

■ When we examine the facts alleged by Jones in his complaint and briefs, we

find he meets the hybrid standard for an employee under the ADEA. On its face, BFEM is a corporation rather than a partnership. This fundamental structural difference would seem to undermine the assertion that Jones enjoys the rights and perogatives of partnership. Unlike a partner, Jones received no profits (or dividends) from BFEM, only a salary and expenses as set forth in his employment contract. Plaintiff's March 11, 1987 Brief In Opposition, pp. 11–12. Each shareholder of BFEM was paid as an employee, each shareholder received W–2 forms and BFEM withheld federal, state and local taxes and FICA contributions from the shareholders' pay. *Id.* at 13. The professional corporation provided its attorneys with a place to work, furniture, equipment and the necessary secretarial and support staff. *Id.* Whereas a partnership is typically governed by the collective decisions of all the partners, BFEM was run by a Board of Directors, which never included Jones. *Id.* at 10–11. In addition, the day to day affairs of BFEM's Pittsburgh office was managed by a local executive or operating committee composed of certain corporate directors, officers and department heads. *Id.* at 11. Jones was not a member of this committee, nor was he an officer or department head. *Id.* All these facts indicate that BFEM was in control of Jones' work, that the economic reality was that of an employment situation, and that this was the intention of the parties.

That Jones was a shareholder does not itself mean that he is not an employee under the ADEA. Courts have applied the ADEA, FLSA and Title VII statutes to employees who were also major stockholders, directors or officers of corporations. *Hyland,* 794 F.2d 793, 796 (2nd Cir.1986) (officer and director of radiology associates organized as a professional corporation was an "employee" under ADEA); *see also Zimmerman v. North American Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983) (vice-president and one-third shareholder considered ADEA "employee"); *E.E.O.C. v. First Catholic Slovak Ladies Association,* 694 F.2d 1068, 1070 (6th Cir.) (officer-directors are "employees" under ADEA),

*cert. denied,* 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 90 (1983); *Novotny v. Great American Federal Savings & Loan Association,* 584 F.2d 1235, 1261 (3rd Cir.) (secretary and treasurer is "employee" under Title VII), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Hoy v. Progress Pattern Co.,* 217 F.2d 701, 704 (6th Cir.1954) (one-eighth shareholder, vice-president, director and chairman of board may be employee within purview of FSLA). The United States Supreme Court has held that "[t]here is nothing inherently inconsistent between the coexistence of a proprietary and an employment relationship." *Goldberg v. Whitaker House Cooperative, Inc.,* 366 U.S. 28, 32, 81 S.Ct. 933, 936, 6 L.Ed.2d 100, 102 (1961) (shareholders in knitwear cooperative were employees under FSLA). Thus, the fact that Jones was a shareholder of BFEM, particularly one who owned less than one percent of outstanding shares, does not disqualify him from being protected as an "employee" under the ADEA.

The facts indicate that Jones had little control over the management of BFEM and that BFEM had considerable control over Jones' work. The "economic reality" of Jones' employment situation was far different from that of a properly classified partner. We therefore find that Jones meets the Third Circuit's hybrid standard for an employee under the ADEA, and deny the defendants' motion for dismissal of the ADEA claims.

**B. Young's Motion To Dismiss ADEA Claim**

Defendant Nelson P. Young has also moved for dismissal of the ADEA claim against him in Count II. Jones replies that his complaint "is not charging Defendant Young with age discrimination, but ... with being a member of an unlawful conspiracy." Plaintiff's March 11, 1987 Brief In Opposition, pp. 18–19. While Jones' second count, subtitled "Conspiracy and ADEA," reads ambiguously on this point, this Court will take him at his word and read his complaint to allege only conspiracy, and not ADEA, claims against Young

and the other individual defendants. Because there is no ADEA claim standing against Young, but instead one for conspiracy to violate ADEA, there is no ADEA claim against Young to dismiss.

### III. ERISA and Other Profit-Sharing and Trust Fund Claims

Count V of Jones' complaint alleges a number of improprieties by BFEM and Baskin, one of the individual defendants, with regard to the law firm profit-sharing and trust fund. These defendants have moved that the action be dismissed or stayed pending arbitration. We have read no legal argumention on these claims from the defendants, however, and therefore find no reason to dismiss. Furthermore, since the claims in Count V do not seem to concern "the interpretation or application of" the employment or shareholder agreements, or "any matter relating to a party's withdrawal, termination or expulsion" within the scope of either of the arbitration clauses, these claims are not subject to arbitration. Count V therefore remains.

### IV. Dismissal of Claims in Count VI

The defendants have moved to dismiss the claims in Count VI. This count seeks relief for five different alleged harms to the plaintiff: (1) potential tax liability for inaccuracies in Jones' personal tax returns due to alleged tax fraud by BFEM and its predecessors; (2) compensation for undeclared and undistributed partnership profits by predecessors to BFEM; (3) compensation for alleged unauthorized charges against Jones' partnership capital account by BFEM predecessors; (4) potential liability under a guaranty and security agreement executed in 1984; and (5) failure of BFEM to pay Jones his proportionate share of fees earned while he was with the firm, but not received until after his discharge.

■ The first and fourth of the alleged harms listed above refer to potential, but as yet unrealized, injuries. As noted above in our ruling on the civil RICO claims, hypothetical tax prosecution or possible liability under a bank note does not present a ripe dispute for this court. *See generally Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 580–581, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409, 419–420 (1985); 13A C. Wright, A. Miller & J.E. Cooper, *Federal Practice and Procedure* § 3532 (Supp. 1987). These two claims are therefore dismissed, without prejudice.

■ The second and third injuries listed above concern undeclared and undistributed partnership profits by BFEM predecessor partnerships and alleged unauthorized charges against Jones' partnership capital account by BFEM predecessor partnerships. Neither of these claims are derived from "a common nucleus of operative fact" surrounding either the ADEA or ERISA claims, the two federal claims for which there is jurisdiction in this case. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Their only relation to these federal questions seems to be that they involve Jones and BFEM; therefore they are not claims such that one "would ordinarily be expected to try them all in one judicial proceeding." *Id.* This court is thus without judicial power to exercise pendent jurisdiction over these non-federal claims. We therefore grant the defendants' motion to dismiss the claims in Count VI relating to unreported and undistributed partnership profits and to the unauthorized charges against Jones' capital account, without prejudice.

■ The fifth injury alleged in Count VI involves legal fees earned but not yet received by BFEM when Jones was discharged. Because this claim alleges actual pecuniary injury and is derived from the facts surrounding Jones' discharge, we deny the motion to dismiss this claim.

### V. Arbitrable Claims

The defendants have moved to stay this action pending arbitration. Both the employment and shareholder agreements between Jones and BFEM contain arbitration clauses requiring arbitration of:

[A]ny dispute between the parties on the interpretation or application of this Agreement, or on any matter relating a party's withdrawal, termination or expul-

sion for any reason whatsoever, in any respect whatsoever....

The Federal Arbitration Act requires federal courts to enforce contractual agreements to arbitrate disputes. 9 U.S.C. § 1 *et seq.* In determining which of Jones' claims should be stayed pending arbitration in accordance with the Federal Arbitration Act, we must first determine which claims fall within the scope of the two arbitration clauses. We must also consider which types of claims are exempted from the mandates of the Federal Arbitration Act.

■ Count I alleges that BFEM discriminated on the basis of age, in violation of the ADEA, when it discharged Jones. Count II alleges a conspiracy to violate the ADEA by BFEM and the former and present BFEM attorney defendants. These allegations obviously fall within the category of disputes subject to arbitration under the employment agreement. However, the United States Supreme Court has ruled that "an employee may not prospectively waive any statutory claim he may have with respect to discrimination claims." *Alexander v. Gardner-Denver*, 415 U.S. 36, 51, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974) (Title VII case); *see U.S.E.E.O.C. v. County of Calumet*, 686 F.2d 1249, 1256 (7th Cir.1982) ("[T]he decision in *Alexander* extends to the ADEA."); *Horne v. New England Patriots Football Club*, 489 F.Supp. 465, 470–471 (D.Mass.1980) (employee need not arbitrate ADEA claim). The motion to stay the ADEA and conspiracy to violate ADEA claims pending arbitration is therefore denied.

■ The claims against BFEM in Count III and against BFEM, the BFEM attorneys and Young in Count IV all pertain to breaches of the employment and shareholder agreements, and are plainly within the ambit of the arbitration clauses. The motions to stay the claims in Count III and IV pending arbitration are therefore granted.

Count V contains allegations of improprieties with regard to the profit-sharing plan and trust fund. While the court has not been given a complete copy of either the employment or shareholder agreements, there is no reason to suspect that these are disputes over the interpretation or application of the agreements, or Jones' termination. The motion to stay the claims in Count V pending arbitration is denied.

All but one of the claims in Count VI were dismissed earlier in this order. The one remaining claim in Count VI concerned Jones' proportionate share of legal fees earned while Jones worked for BFEM, but not received by the firm until after his discharge. This is a dispute concerning an interpretation of the employment and/or shareholder agreements, and relates to Jones' discharge as well, and is arbitrable. The surviving claim in Count VI, regarding Jones' share of legal fees earned prior to his discharge, is stayed pending arbitration.

Since this Court has concluded that all claims involving SAI must be dismissed, it follows that it should be removed as a party defendant in this case.

## ORDER

AND NOW, this 24th Day of September, 1987, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that:

(1) All claims plead based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) are DISMISSED as to all defendants;

(2) Defendants' Motion to Dismiss claims in Count I based on alleged violations of the Age Discrimination in Employment Act (ADEA) are DENIED;

(3) Defendants' Motions to Dismiss ADEA claims in Count II are DENIED since ADEA claims were not plead in Count II;

(4) Defendants' Motions to Dismiss as to Counts III, IV and V are DENIED;

(5) Defendants' Motions to Dismiss as to Count VI are GRANTED and said claims are DISMISSED, except as to the claim in Count VI for compensation for legal fees earned before but paid after Plaintiff's discharge, for which Defendants' Motions to Dismiss are DENIED;

(6) Defendants' Motions to Stay as to Counts I, II and V are DENIED;

(7) Defendants' Motions to Stay as to Counts III, IV and the surviving claim in Count VI for compensation for legal fees earned before but paid after Plaintiff's discharge are GRANTED and all proceedings in this case as to said Counts are STAYED pending arbitration of the matters plead in said Counts;

(8) Those portions of the complaint pertaining to Defendant SAI are dismissed and it shall no longer remain as a party defendant.