**ANITORA TRAVEL, INC., Plaintiff,**

v.

**Zvi (Steve) LAPIAN, Defendant.**

**No. 87 Civ. 0015 (PKL).**

United States District Court,
S.D. New York.

Jan. 20, 1988.

J. Owen Zurhellen, III, New York City, for plaintiff.

Wistendahl & Folkenflik, New York City (Max Folkenflik, Douglas Capuder, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge:

Plaintiff filed an amended complaint (the "amended complaint") in this action on April 23, 1987, seeking damages for breach of an employment contract, and treble damages pursuant to the civil provisions of the RICO statute, 18 U.S.C. §§ 1961–1964. Plaintiff also seeks injunctive relief directing defendant to return any business records he took from plaintiff and impressing a constructive trust on the proceeds of certain moneys obtained by defendant.

This Court has federal question jurisdiction over plaintiff's RICO claim. 28 U.S.C. § 1331. All other claims are pendent state law claims.

Defendant has moved to dismiss the amended complaint pursuant to Fed.R. Civ.P. 9(b) and 12(b)(6).

## FACTUAL BACKGROUND

On a motion to dismiss, the complaint must be read generously and every reasonable inference drawn in favor of the plaintiffs. *Pross v. Katz,* 784 F.2d 455, 457 (2d Cir.1986); *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 558 (2d Cir.1985); *Metzner v. D.H. Blair & Co., Inc.,* 663 F.Supp. 716, 719 (S.D.N.Y.1987) (Weinfeld, J.). The complaint should only be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Stone v. Chung Pei Chemical Industry Co. Ltd.,* 790 F.2d 20, 22 (2d Cir.1986).

So reading the complaint for purposes of defendant's motion, the relevant facts are as follows:

Plaintiff, Anitora Travel, Inc., is a New York corporation. Plaintiff is a registered travel agency selling tickets for interstate passenger air travel.

Defendant is a resident of New York. Beginning in May 1983, defendant was employed by plaintiff as an "outside sales agent." The parties entered into an agree-

ment (the "Employment Agreement") which provided, *inter alia,* that:

a) plaintiff would provide office, local telephone, and other facilities to defendant;

b) defendant would arrange for and sell travel services to customers under plaintiff's name;

c) commissions earned for services sold by defendant would be shared, 62% to defendant and 38% to plaintiff, with the exception of one client, Emerson Radio Corporation, to which a different arrangement applied;

d) defendant would pay, or reimburse plaintiff for, certain expenses, including messenger and courier charges and long-distance telephone charges;

e) defendant would repay to plaintiff any commission share previously paid to defendant when later events, such as a ticket refund by an airline, required plaintiff to refund the commission to the vendor;

f) all sales of travel services made by defendant would be subject to the commission-sharing arrangement; and

g) defendant would be responsible for the payment of all airline or "ARC" debit memos for unpaid tickets, under-paid tickets, or any ticket irregularities, as well as any fines resulting therefrom, and for payment of like amounts due to suppliers other than airlines, such as hotel and car rental services.

Defendant resigned from his employment as plaintiff's outside sales agent in October 1986. During the same period in late 1986, plaintiff became aware that defendant had engaged in certain conduct which plaintiff believed breached defendant's obligations under the employment agreement, breached defendant's fiduciary and implied obligations to plaintiff, and violated the federal mail and wire fraud statutes. Plaintiff determined that defendant's improper conduct involved four general types of activity.

*First,* plaintiff determined that defendant had sold travel services, while acting under the terms of the Employment Agreement, solely for defendant's own account and that defendant had failed to pay to plaintiff its share of commissions on such sales. Amended Complaint at ¶ 6(a).

*Second,* plaintiff determined that defendant, in order to prevent disclosure of his wrongful activities, had intercepted mail addressed to plaintiff. Amended Complaint at ¶ 6(c).

*Third,* plaintiff determined that defendant had taken possession of business records belonging to plaintiff and had refused to return them, despite plaintiff's demand to do so. Amended Complaint at ¶ 6(d).

*Fourth,* plaintiff determined that defendant, apparently acting in concert with certain customers, defrauded certain airlines by selling discount fare tickets and thereafter converting the tickets to non-discounted, or lesser discounted, tickets without obtaining the price differential. Plaintiff determined that these fraudulent acts were committed through three types of schemes.

In one type of scheme allegedly used by defendant, upon receipt of a request for an airline ticket, defendant would prepare and issue a ticket (which consists of multiple copies, or coupons) for travel on a date sufficiently in the future to permit a discounted fare, but would call in to the relevant airline reservations for travel on a different date actually requested by the customer. The ticket would state the correct price for travel on the dates shown. Defendant then would put stickers on the "flight coupons" (the portions which are presented to, and kept by, the airlines) providing for travel on the false future travel date, and would issue a boarding pass for the actual travel date. The price of travel on the actual travel date was greater than the discounted price charged to, and paid by, the customer. The ticket portions, or "coupons", given to plaintiff (the "agency coupon") and sent by mail to the Airline Reporting Corporation (the "auditor's coupons") for audit purposes, were not changed to show the actual travel dates.

Plaintiff alleges, for example, that on or about October 1, 1984, defendant received a

request from United Feather & Down Co., of Brooklyn, New York, for tickets for a Mr. Belfer and Mr. Palmer to travel from New York City to Chicago on October 2, 1984, and return on October 3, 1984. Defendant issued two tickets for travel from New York to Chicago for October 10, 1984, with return tickets for October 16, 1984, at the discount price appropriate for such travel. On October 10, 1984, defendant caused an invoice to be issued to United Feather & Down Co., showing travel on October 2 and 3, 1984, but listing tickets which were written for travel on October 10 and 16, 1984.

Plaintiff alleges that when defendant himself was unable to issue a boarding pass, defendant employed a slightly different scheme. Upon receipt of a request for a ticket, defendant would issue a ticket to his customer showing the correct date(s) of travel—but also showing a discount fare not actually available for that travel date. Defendant would also create a "dummy" ticket showing travel on the same date(s) at the correct price, and would show the "dummy" ticket at the airline office in order to obtain a boarding pass. Upon returning to plaintiff's office, defendant would then "void" the dummy ticket and affix the boarding pass to the discount ticket issued to the customer. The customer would pay the discounted price.

For example, plaintiff alleges that on or about May 1, 1985, defendant received a request for two tickets, one for a Mrs. Rosenbrand and the other for a Mrs. Asoulay, for travel from new York to West Palm Beach on May 2, 1985, and returning May 5, 1985. Defendant issued two "dummy" tickets for that travel showing a correct price ($278 per ticket), and defendant used those "dummy" tickets to obtain boarding passes from Delta Airlines. The same day, and very shortly after issuing the "dummy" tickets, defendant issued two other tickets, which bore the very next two serial numbers, but which showed a price of $178 each—the price actually paid by the customers.

In a third type of scheme, defendant would issue tickets out of sequence by back-dating the tickets, in order to take advantage of advance purchase discounts. Defendant would issue tickets for a discount fare, and the customers would pay the discount fare, even though in fact the tickets were not purchased sufficiently in advance of travel to permit the discount fare. Auditors coupons would be sent by mail to the Airline Reporting Corporation showing dates of travel which would allow the discount fare.

For example, plaintiff alleges that during the week of May 18, 1986, defendant submitted "auditors coupons" for 5 members of the Azouly family for travel from New York to Florida and back in late May 1986. However, the tickets themselves all show an issue date of April 28, 1986.

## DISCUSSION

18 U.S.C. § 1964(c) provides a civil remedy to "any person injured in his business or property by reason of a violation of section 1962 of this chapter." In its complaint, plaintiff alleges that the fraudulent schemes employed by defendant violated "18 U.S.C.A. § 1962(a) and/or (c)." Amended Complaint at ¶ 8.

It is well established that to claim a violation of 18 U.S.C. § 1962(c), a plaintiff must allege 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. *Sedima, S.P.L.R. v. Imrex*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed. 2d 346 (1985). To claim a violation of § 1962(a), a plaintiff must allege that 1) income derived from a pattern of racketeering activity 2) has been used or invested 3) to acquire an interest in, or establish or operate 4) an enterprise. 18 U.S.C. § 1962(a).

Defendant argues that plaintiff's amended complaint must be dismissed because plaintiff has failed properly to plead the existence of a pattern of racketeering activity; has failed to plead the existence of an enterprise; and has failed to plead that it has been injured in its person or property by the conduct constituting the RICO violation. Additionally, defendant argues that plaintiff has not shown a violation of 18 U.S.C. § 1962(a), because plaintiff has not

alleged that any income derived from a pattern of racketeering activity was invested or used to purchase an interest in any enterprise engaged in interstate or foreign commerce.

### A. PATTERN OF RACKETEERING ACTIVITY: ADEQUACY OF THE MAIL FRAUD AND WIRE FRAUD PLEADINGS

■ A viable claim for damages under the RICO statute requires a proper allegation that the defendant has committed two or more "predicate" acts, 18 U.S.C. § 1961(1), constituting a "pattern of racketeering activity." 18 U.S.C. §§ 1961(5), 1962, 1964(a), 1964(c). *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 51 (2d Cir.1987); *see also Sedima*, 473 U.S. at 495–96, 105 S.Ct. at 3284–85.

In its complaint, plaintiff claims that defendant engaged in a pattern of racketeering activity within the meaning of § 1961(1) because, on at least two occasions between January 5, 1984 and October 1986, defendant's airline ticket sale schemes were "in violation of, *inter alia*, 18 U.S.C. A. § 1341 ('mail fraud') and § 1343 ('wire fraud')."[1] Amended Complaint at ¶ 8.

■ Where mail and/or wire fraud violations are treated by a plaintiff as "predicate acts" constituting a pattern of racketeering activity, those fraud violations must be pleaded with the specificity and particularity required by Fed.R.Civ.P. 9(b). *See Beck*, 820 F.2d at 49–51; *see also Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 450 (E.D.N.Y.1987); *Equitable Life Assurance Society v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1028 (S.D.N.Y.1985); *Rich–Taubman Associates v. Stamford Restaurant Operating Co., Inc.*, 587 F.Supp. 875, 878 (S.D.N.Y.1984).

■ Fed.R.Civ.P. 9(b), an exception to the generally liberal pleadings allowed by Rule 8, requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

particularlity." As Judge Winter recently explained, pleadings of fraud, in order to satisfy Rule 9(b), must specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). More generally, the complaint's fraud allegations must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and must give "adequate information" to allow the defendant "to frame a response." *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557–58 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

■ Moreover, the mail and wire fraud statutes also require a showing of *intentional* fraud. *Beck*, 820 F.2d at 49. As Judge Newman has explained:

> Although Rule 9(b) provides that intent and "other condition of mind" may be averred generally, plaintiffs must nonetheless provide some factual basis for conclusory allegations of intent. These factual allegations must give rise to a "strong inference" that the defendants possessed the requisite fraudulent intent. A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so. Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

*Beck*, 820 F.2d at 49–50 (citations omitted).

■ The acts of mail or wire fraud mentioned in the amended complaint have been pleaded with adequate particularity to satisfy the requirements of Rule 9(b). Specifically, plaintiff has detailed the three types of fraudulent schemes alleged to have been employed by the defendant; plaintiff has stated the general time period during which these schemes are alleged to have been employed; and for each of the three types of schemes, plaintiff has provided at

---

**1.** Nowhere in the complaint does plaintiff mention any other state or federal laws to which the term *"inter alia"* might refer. Thus, the com-

plaint can only be read, at this stage, to allege predicate acts of mail fraud and wire fraud.

least one specific example specifying not only the time, place, and the fraudulent speaker, but also the content of the misrepresentations. For example, with regard to the first type of fraudulent scheme listed—where defendant would himself issue a boarding pass—plaintiff alleges in ¶¶ 11(a) and 11(b) that:

a. For example, on October 1, 1984, or shortly before, defendant received a request from United Feather & Down, of 77 Commercial Street, Brooklyn, New York for tickets for a Mr. Belfer and Mr. Palmer to travel from LaGuardia (NYC) airport to O'Hare (Chicago) airport on October 2, 1984, and returning on October 3, 1984. Defendant issued two tickets for travel from LaGuardia to O'Hare for October 10, 1984, and returning October 16, 1984, at the discount price appropriate for such travel. On October 10, 1984, defendant caused an invoice to be issued to United Feather & Down showing travel on October 2nd and 3rd, 1984, listing tickets which were written for travel for October 10th and 16th, 1984.

b. And for another example, on November 8, 1984, or shortly before, the defendant received a request from Belgo Diamond Co., 2 West 46th Street, New York, New York, for a ticket for a Mr. Avital to travel from Kennedy (NYC) airport to Los Angeles (Calif.) for November 11, 1984, and returning to Kennedy airport for November 14, 1984. Defendant issued a ticket for travel from Kennedy for November 15, 1984, and returning November 22, 1984, at the discount price appropriate for such travel. On November 8, 1984, defendant caused an invoice

to be issued to Belgo Diamond Co. showing travel on November 11th and 14th, 1984, listing a ticket written for travel for November 15th and 22nd, 1984.

These paragraphs, read in conjunction with ¶¶ 10–11, give adequate information to allow the defendant to frame a response to the fraud allegations. Plaintiff has provided two dates on which the alleged fraud occurred. The amended complaint makes clear that this scheme involved wire communications to the airlines to report the reservations involved, communications which are alleged to have been made across state lines. Amended Complaint at ¶ 11. The transactions described in these paragraphs clearly indicate that these communications were made on or about October 1, 1984, and November 8, 1984; that defendant performed the fraudulent acts; that the acts occurred from plaintiff's office; that the fraudulent communications misrepresented the travel dates in order to provide a discount fare not actually allowed by the airline involved; and that these communications were used in a scheme which allowed defendant to defraud certain airlines and plaintiff.[2] While no airline is named specifically with regard to the examples of the first fraudulent scheme, the plaintiff has identified five airlines that were the subject of defendant's schemes.[3] Plaintiff has sufficiently indicated details of a fraud against the travel agency.

Moreover, plaintiff, with regard to the scheme, has sufficiently alleged that the fraud was *intentional.* Plaintiff has alleged facts showing a motive for committing fraud—namely to sell tickets to his

---

**2.** *See, e.g., Connors v. Lexington Insurance Co.,* 666 F.Supp. 434, 450–51 (E.D.N.Y.1987). Where information similar to that in the present complaint was provided, Judge Glasser found that the pleadings were sufficient to satisfy the requirements of Rule 9(b). As Judge Glasser there observed:

With respect to the allegations of mail fraud, plaintiff's complaint satisfies the particularity requirements of rule 9(b). Specifically, plaintiff has described where and how the alleged scheme occurred, given the approximate dates of his transactions with IGBE and thus, by inference, the approximate dates of mailings, and identified the alleged misrepresentations and omissions, as well as the "speakers." It is

not necessary for plaintiff to provide more detail at this stage of the proceedings. As one court has noted, rule 9(b) is satisfied if enough information is given to allow the defendants to frame a responsive pleading and to assure the court that a sufficient basis exists for the allegations made.

*Id.* at 450–51 (citations omitted).

**3.** The Court does note, however, that if plaintiff chooses to file a new amended complaint, as provided by this Order, allegations naming the airlines involved in each example of the fraudulent schemes would bolster the complaint's compliance with the requirements of Rule 9(b).

customers at a discounted price, allowing him to earn commissions on sales he might otherwise not have made—and showing a clear opportunity for doing so. *See Beck,* 820 F.2d at 49–50. Moreover, even were defendant's motive not clearly apparent, plaintiff has properly pleaded the scienter requirements of the mail and wire fraud statutes because the facts alleged indicate conscious behavior by the defendant to misrepresent travel information and allow sale of tickets at an improper discount price. *See id.*

Similarly sufficient detailed allegations have been made with regard to the two other types of schemes alleged in the complaint. *See* Amended Complaint at ¶¶ 12–13.

### B. INJURY

18 U.S.C. § 1964(c) only authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of § 1962." It is by now well established that a plaintiff thus "only has standing if, and can only recover to the extent that, he has been injured in his business or property by conduct constituting the violation [of § 1962]." *Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285.

■ Defendant correctly argues that plaintiff will only have standing if it alleges the existence of an actual, present injury, not some speculative injury that might only possibly occur in the future. Generally, courts have treated as unripe for adjudication claims that involve contingent future events that may not occur as anticipated, or indeed may not occur at all. *See, e.g., Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3332–33, 87 L.Ed.2d 409 (1985)

(where a party, for example, wants to challenge constitutionality of jurisdiction of a court, standing exists only if claimant can demonstrate that it *has been* or *inevitably will be* subject to such unconstitutional jurisdiction); *see also* 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532 (1984).

Similarly, the language of § 1964(c) makes clear that a party must actually have been injured—that is, subject to injury or inevitably to be subject to a future injury—in order to have standing to bring a civil RICO claim. Mere speculation that some injury might occur—for example, that an injury might be inflicted if some third party would choose to bring a lawsuit to determine potential liability of the plaintiff—is insufficient to state a civil RICO claim. *See, e.g., Bank Leumi Le Israel, B.M. v. Lippe,* slip op. No. 84 C. 9700 (N.D.Ill. Dec. 16, 1986) [Available on WESTLAW, 1986 WL 14653][4]; *see also Jones v. Baskin, Flaherty, Elliot and Mannino, P.C.,* 670 F.Supp. 597, 598–600 (W.D.Pa.1987).

■ The language of plaintiff's amended complaint makes reference to two types of "injuries": first, plaintiff claims to be subject "to liability to the defrauded carriers for the price differential [created by defendant's fraudulent ticket sales], which is believed to amount to $175,000," Amended Complaint at ¶ 6(b); second, the complaint makes reference to commissions lost by plaintiff as a result of defendant's actions, Amended Complaint at ¶ 6(a).

Plaintiff's claim that it is subject "to liability to the defrauded carriers", as pleaded in the amended complaint, is insufficient to meet the "injury" requirement of

---

**4.** Where a RICO counterclaim alleged predicate act violations of § 10(b) of Securities and Exchange Commission Rule 10(b)(5), the court found:

> even if the Bank did owe a duty to Lippe to disclose material information, his alleged "injury" is not adequately pled. He alleges that Tomcat is now an entity of questionable financial viability based solely on the fact that at some future date two investors may have a defense to notes that may be outstanding. The problem with this allegation is that it is

too speculative. Essentially, Lippe is alleging that his partnership interest has been tarnished. It is significant that Lippe does not allege that the two investors actually have outstanding loans or that the Bank has unsuccessfully demanded payments on these notes. Hence, his allegation that Tomcat is of a questionable financial viability as a result of the Bank's failure to disclose material facts is not adequately pled.

*Bank Leumi Le Israel, B.M. v. Lippe,* slip op. No. 84 C. 9700 (N.D.Ill. Dec. 16, 1986).

§ 1964(c). Nowhere in the amended complaint does plaintiff allege that it has been sued by any defrauded airline; nor does plaintiff allege that such a suit is reasonably certain to occur. Nor does plaintiff allege that it has actually been made liable to the airlines either by court order, agreement, or any other instrument or set of facts. That some airline might seek to collect funds from plaintiff at some future date is an insufficient basis for an "injury" claim—especially where it is mere speculation that any airline will actually seek to collect any funds.[5]

In contrast, plaintiff can claim to have been "injured" to the extent it alleges that, as a proximate result of defendant's predicate acts, plaintiff was denied its proper share of commissions on ticket sales. As defendant correctly points out, however, the only damages sought in the amended complaint under plaintiff's RICO claim are damages relating to plaintiff's alleged liability to the defrauded airlines. Plaintiff claims, in ¶ 6(b) of the Amended Complaint, that its liability to the defrauded airlines "is believed to amount to $175,000." With respect to the RICO claim, plaintiff's second claim for relief, plaintiff only seeks an award of "$175,000, and trebled damages and attorneys fees." Amended Complaint at ¶ 18(b). While plaintiff does state that it "is liable to the airlines for the difference between the price charged to defendant's clients and the correct price, less any additional commission to which plaintiff would be entitled," Amended Complaint at ¶ 10, this only mention of the commissions in the RICO claim makes them conditional on plaintiff's speculative liability to the airline. Indeed, the discussion of lost commissions in ¶ 6(a) of the amended complaint only relates to plaintiff's first claim for relief, which concerns defendant's alleged violations of the "obligations, terms and conditions of his employment." Amended Complaint at ¶ 7. Thus, while plaintiff may wish to read the amended complaint to imply that defendant's fraudulent activities had the proximate result of denying plaintiff its proper share of commissions on airline ticket sales, the language of the complaint itself simply makes no such allegation. Absent such an allegation, or some other allegation of an injury to plaintiff's business or property that was the proximate result of defendant's predicate acts, the amended complaint fails to state a civil

---

5. Plaintiff correctly points out that a party can recover present damages for injuries that will accrue in the future. But none of the cases cited by plaintiff stands for the principle that a plaintiff can recover speculative damages. For example, plaintiff states in its brief that:

Similarly, plaintiff [sic] under the antitrust laws can recover damages for future injuries. In *Lehrman v. Gulf Oil Corp.*, 464 F.2d 26 (5th Cir.), cert. denied, 409 U.S. 1077, 93 S.Ct. 687 [34 L.Ed.2d 665] (1972), the plaintiff was put out of business by the anticompetitive conduct of the defendant. The court permitted recovery of damages for future lost profits against the defendant's assertion that future injuries could not be compensated under the Sherman Act. To the extent that recovery of damages for yet-to-be-sustained injuries injects a measure of uncertainty, both in whether injury will be suffered at all and in the amount, the court held that "[t]he wrongdoer must bear the risk of the uncertainty in measuring the harm he causes." 464 F.2d, at 45. So long as future injuries are "proved with reasonable certainty", an antitrust plaintiff can recover damages for them. *Volasco Products Co. v. Lloyd A. Fry Roofing Co.*, 308 F.2d 383 (6th Cir.1962), cert. denied 3772 [372] U.S. 907, 83 S.Ct. 721 [9 L.Ed.2d 717] (1963).

Plaintiff's Memorandum of Law at 4–5.

Whether or not plaintiff's interpretation of antitrust law is correct, plaintiff's claim that it is liable to airlines cannot be considered similar in this context to the lost profits claim in *Lehrman* which plaintiff discusses. In *Lehrman*, the court determined that as a result of the antitrust violations of defendant, plaintiff had lost future profits, and an award of damages for those lost profits could be made, even if the exact amount of those losses could not be ascertained at the time of trial. Indeed, the court in *Lehrman* claimed only to be applying "the familiar rule that a wrongdoer is responsible for uncertainty in calculating the damages proximately caused by his own wrongdoing." 464 F.2d at 45. In contrast, in the present case, it would not be possible, based on the allegations in the complaint, for this Court to determine at trial that plaintiff had in fact, or will in the future, become subject to liability to the airlines. While in *Lehrman*, the court could determine, with reasonable certainty, that future profits would be lost, in the present case plaintiff can only speculate that any of the defrauded airlines would seek to collect damages from plaintiff or, for that matter, anyone else.

cause of action under the RICO statute. 18 U.S.C. § 1964(c).

## C. ENTERPRISE REQUIREMENT

A civil RICO suit must allege an injury resulting from a violation of § 1962. In the present case, plaintiff claims to have been injured by acts which violated § 1962(a) and/or § 1962(c). Section 1962(a) makes it unlawful to use money derived from a pattern of racketeering activity to invest in or operate an enterprise; § 1962(c) makes it unlawful to conduct an enterprise through a pattern of racketeering activity. *See, generally, Sedima,* 473 U.S. at 479, 105 S.Ct. at 3275.

In response to defendant's argument that the amended complaint fails to allege properly the existence of the "enterprise" required by both § 1962(a) and § 1962(c), plaintiff claims:

> The enterprise requirement of the RICO statute is here met in two ways. First, plaintiff (a corporation) is clearly an "enterprise" within the literal terms and underlying purpose of the RICO statute. Defendant's scheme was, equally clearly, perpetrated "in connection with the conduct" (*Sedima, supra*) of plaintiff's business. Second, defendant himself, especially by virtue of the nature and persistence of his conduct, was an "enterprise."

Plaintiff's Memorandum at 8.

### *§ 1962(a)*

Section 1961(4) defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Whatever the term "enterprise" may mean in the context of § 1962(a), it is clear that the amended complaint does not identify an enterprise, engaged in interstate commerce, in which defendant purchased an interest, or which defendant established or operated, through the use or investment of funds derived from the alleged pattern of racketeering activity.

Certainly, plaintiff, which claims to have been defrauded and *deprived* of moneys illegally obtained by defendant in his pattern of racketeering activity, cannot also claim that such moneys were invested or used by defendant to purchase an interest in or to operate plaintiff; thus, plaintiff cannot allege that plaintiff itself is the enterprise for purposes of stating a civil claim relating to violations of § 1962(a).

As to plaintiff's argument that defendant himself is the "enterprise", the complaint fails to allege that any moneys obtained by defendant, through his pattern of racketeering activity, were invested or used by defendant to operate, or obtain an interest in, "himself." While plaintiff does state, in ¶ 6(a) of the Amended Complaint, that defendant "sold travel services ... solely for his own account and failed to pay plaintiff its share of commissions on such sales," Amended Complaint at ¶ 6(a), it is clear that this activity is not alleged to be included in the predicate acts, involving fraud against the airlines, which are actually alleged to constitute the pattern of racketeering activity in the civil RICO claim. Amended Complaint at ¶¶ 8–17.

Thus, the Amended Complaint fails to state a civil RICO claim based upon an alleged violation of § 1962(a).

### *§ 1962(c)*

In *Beck, supra,* the Second Circuit explained that, in the context of § 1962(c), an "enterprise" is " 'a group of persons associated together for a common purpose of engaging in a course of conduct' and 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.' *United States v. Turkette,* 452 U.S. 576, 583 [101 S.Ct. 2524, 2528, 69 L.Ed.2d 246] (1981)." *Beck,* 820 F.2d at 51. The Court in *Beck* then explained that, "[t]his circuit requires that, under section 1962(c), the enterprise be a *continuing operation* and that the [predicate] acts be related to the common purpose." *Beck,* 820 F.2d at 51 (citing *United States v. Ianniello,* 808 F.2d 184, 191 (2d Cir.1986), *cert. denied, Cohen v. United States,* —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987)) (emphasis in original).

At the very least, *Beck* requires that a civil RICO pleading allege the common purpose of the "enterprise", and allege that the predicate acts are related to that common purpose. *See, e.g., Newman v. L.F. Rothschild,* 662 F.Supp. 957, 958 (S.D.N.Y. 1987) (Sweet, J.).[6]

■ As to plaintiff's argument, in its brief, that plaintiff itself is the "enterprise" whose affairs defendant conducted through a pattern of racketeering activity under § 1962(c), it should first be observed that nowhere in the amended complaint does plaintiff identify itself as an "enterprise." But even if the amended complaint is read to identify plaintiff as the "enterprise" for purposes of a violation of § 1962(c), the complaint still fails to allege a "common purpose" of the enterprise to which defendant's predicate acts were related. Thus, with respect to plaintiff itself being the "enterprise", defendant has failed to properly allege that defendant "conducted the affairs of an enterprise through a pattern of racketeering activity."

■ For purposes of violations of § 1962(c), plaintiff has also failed to state a civil RICO claim even if the complaint is read to allege that defendant himself is the enterprise. It is well established in this Circuit that with respect to § 1962(c)—as opposed to § 1962(a)—the enterprise and the defendant cannot be the same person or entity. *See Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *see also Haroco, Inc. v. American National Bank & Trust Company of Chicago,* 747 F.2d 384, 399–403 (7th Cir.1984).

Plaintiff states in its brief that "[r]ecent authority affirms that the enterprise may be the defendant-perpetrator of the predicate criminal conduct himself. *DeMuro v.*

E.F. Hutton & Co.,* 643 F.Supp. 63 (S.D.N.Y.1986)," Plaintiff's Memorandum at 8; yet the *Demuro* case, cited by plaintiff, actually only addresses the question of whether the defendant in that action could "be both the person and enterprise for purposes of a cause of action pursuant to 18 U.S.C. § 1962(a)," *DeMuro,* 643 F.Supp. at 65 (emphasis added). In fact, in *DeMuro,* Judge Knapp recognizes that the very cases which have indicated that the defendant and the enterprise can be the same for purposes of § 1962(a) have also held that under § 1962(c) "the person and the enterprise must be distinct." *Id.*

## CONCLUSION

Thus, plaintiff's amended complaint fails to state a civil RICO claim pursuant to 18 U.S.C. § 1964(c), and thus plaintiff's second claim for relief must be dismissed.

Plaintiff's remaining claims are pendent state law claims. Because these pendent claim provide no other basis for federal jurisdiction, and because no considerations of judicial economy would be served at this stage of the litigation by retaining jurisdiction over the pendent claims, those claims are likewise dismissed. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also Mastercraft Industries Inc. v. Breining,* 664 F.Supp. 859, 861 (S.D.N.Y. 1987); *In Re Investors Funding Corp. of N.Y. Securities Litigation,* 523 F.Supp. 550, 560 (S.D.N.Y.1980).

Plaintiff is hereby given leave to serve a second amended complaint, consistent with this order, within twenty days.

SO ORDERED.

---

**6.** In *Newman,* plaintiffs alleged that: Defendant L.F. ROTHSCHILD is an enterprise as that term is defined in 18 U.S.C. 1961 engaged in interstate commerce and the activities of which affect interstate commerce. Such activities in and affecting interstate commerce include, among other things, the purchase and sale of securities, which have moved in interstate commerce.

Judge Sweet dismissed the complaint, stating that "[m]issing are allegations of common purpose, as well as allegations that the alleged predicate acts are related to that common purpose. Consequently, under *Beck,* the Amended Complaint fails to allege 'enterprise' properly, and the RICO count will be dismissed." *Newman,* 662 F.Supp. at 958.